MAY TERM, 1881, No. 154.                    MAY 24TH, 1881.

## Fosselman *versus* Elder.

1. A testatrix, in her will, which was duly proved, devised and bequeathed, *inter alia*, as follows:

"I do will, devise, and bequeath to Isabella Fosselman (who has lived with me for many years) the house and lot wherein I now live, together with all the furniture and personal property that may be therein at the time of my decease. By furniture and personal property I mean everything I may have at my decease, except notes and bonds and evidences of debt, and also $1000 in cash, to be paid her as soon as practicable after my decease; provided, nevertheless, the legacies herein bequeathed shall be forfeited if she claims any compensation for services rendered me from my estate."

Among her valuable papers was found an envelope on which was indorsed: "Dear Bella, this is for you to open." It contained a note for $2000 and the following paper:

. "LEWISTOWN, October 2d, 1879.

"My wish is for you to draw this $2000 for your own use should I be called off sudden.

"ELIZABETH FOSSELMAN."

The indorsement on the envelope, and the paper contained in it, were in the handwriting of the testatrix. It was proven that she was accustomed to call Isabella Fosselman "Bella." *Held*, that the paper was testamentary in its character, intended to take effect on the death of the testatrix, and clearly designated the accompanying note as the subject of the bequest.

2. The inscription on the envelope should read as a preface to and in connection with the paper inclosed therein, and they together constitute a valid testamentary disposition of the accompanying note operating as a codicil to the will of the testatrix.

3. It is not essential to the validity of a will that the different parts should be physically united. It is sufficient if they are connected by their internal sense, or by a coherence and adaptation of parts.

4. It would be unimportant if it were shown affirmatively that the address on the envelope was written last in order of time. If the signature of the writer is appended to what is written, it fully meets the requirements of the statute.

ERROR to the Court of Common Pleas of *Mifflin County.*

This was an issue amicably framed in the Court below between Isabella Fosselman, plaintiff, and George W. Elder, executor of the last will and testament of Elizabeth Fosselman, deceased, defendant, to ascertain whether certain papers therein described constituted a good testamentary disposition of a certain note for $2000.

On the trial before JUNKIN, P. J., the following facts were shown:

Elizabeth Fosselman died in January, 1880, leaving a last will and testament, dated July 17th, 1878, of which she appointed George W. Elder executor. In it she devised and bequeathed, *inter alia*, as follows:

"I do will, devise, and bequeath to Isabella Fosselman (who has lived with me for many years) the house and lot wherein I now live, together with all the furniture and per-

[Fosselman *v.* Elder.]

sonal property that may be therein at the time of my decease. By furniture and personal property I mean everything I may have at my decease, except notes and bonds and evidences of debt, and also $1000 dollars in cash, to be paid her as soon as practicable after my decease; provided, nevertheless, the legacies herein bequeathed shall be forfeited if she claims any compensation for services rendered me from my estate."

In the bank book of the testatrix, which was in a bureau drawer in her sleeping-room, one of the appraisers of the estate found a sealed envelope, on which was indorsed in her handwriting: "Dear Bella, this is for you to open." Within the envelope was inclosed a promissory note in the following form:

$2000.                              LEWISTOWN, October 2d, 1879.

One year after date the Trustees of the Presbyterian Church of Lewistown promise to pay to Mrs. Elizabeth Fosselman, or order, the sum of $2000, without defalcation, for value received, with interest at the rate of five per cent., payable semi-annually.

          Attest:                          T. F. McCOY,
                                    Pres. of the Board of Trustees.
GEORGE W. SOULT,
          Secretary.

Along with this note was inclosed a paper on which was written in the handwriting of testatrix:

                              "LEWISTOWN, October 1–2, 1879.
"My wish is for you to draw this $2000 for your own use should I be called off sudden.
                              "ELIZABETH FOSSELMAN."

It was proven that the testatrix habitually called the plaintiff "Bella."

The Court reserved the question whether these papers together constituted a testamentary disposition of the note, and the jury gave a verdict for the plaintiff.

The Court entered judgment for the defendant, *non obstante veredicto*, filing the following opinion:

"First, then, as to the exhibit 'A,' being testamentary in its character. It was to take effect after death, and contains a disposition, either of $2000, or a note for that amount found in the same envelope. In Cock *v.* Cooke, L. R. 1. P. and D., 241, a duly executed paper in these words: 'I wish my sister to have my bank book for her own use,' was held testamentary; also in the Goods of Cole, L. R., 2 P. & D.,

[Fosselman v. Elder.]

362.   In Doe d. Cross v. Cross, 8 Ad. and Ellis, N. S., 714, a person being in India executed the following instrument: ' Know all men,' etc., ' that I make E. my lawful attorney, for me and in my name and to my use to ask, demand,' etc. ' And I do empower her, the said E., to hold and retain all proceeds of the said property for her own use until I may return to England and claim possession in person, or, in the event of my death, I do hereby, in my name, assign and deliver to said E. the sole claim to the before-mentioned property, etc.' He died in India without having returned to Great Britain, and it was held that the writing operated as a devise to E.   Chief Justice DENMAN said: ' What principle of law is there to prevent it from being a will?'   So Marsden in re, 1 Swab. & Trist., 542, where one being informed that he could not recover from his present illness, expressed a wish that his wife should be in a condition to receive at his death certain sums of money in two savings banks, and signed, in the presence of two witnesses, orders for the payment of the money to her by the banks, and died the day after, the Court granted administration to the widow, with the orders annexed, as containing the will of the deceased ; and there are many similar cases cited by Redfield on Wills, 180, 181, etc., in foot-notes; Williams on Ex., sec. 3.

" The next question is, has testatrix sufficiently designated the object of her bounty?   Exhibit 'A' does not name Isabella, the plaintiff, but the envelope is addressed to her, and is this address a part of her will?   It is in testatrix's own handwriting, but it is not signed at the end thereof.   Unless, then, the words written on the envelope, ' Dear Bella, this is for you to open,' can be made a part of the will, the $2000 bond or note is not given to any one by name or description. In Wikoff's Appeal, 3 Harris, 290, Chief Justice GIBSON declares, that it is a rudimental principle that a will may be made on distinct papers, as was held in the Earl of Essex's Case, cited 1 Show, 69 ; that it is sufficient that they are connected by their internal sense, by coherence or adaptation of parts.   In Ginder v. Farnum, 10 Barr, 98, several sheets of paper fastened together by a string, with the signature of the testator at the end thereof, were held sufficient under the act of Assembly.   But here there was inherent evidence on the face of the papers, and no proof of any fraudulent addition.   The most diligent search has disclosed no case in which a mere address or indorsement on an envelope or wrapper containing a will has ever been admitted to probate as a part of the inclosed will.   Whenever a letter has been shown to be testamentary it was complete in itself, requiring

[Fosselman *v.* Elder.]

no aid from the envelope, as see Morrell *v.* Dickey, 1 John-
son, ch. 153. This case is so novel that we must reason upon
elementary principles. Now it is undoubted that had the
words, 'Dear Bella, this is for you to open,' been added,
without the testatrix's signature to the foot of the signed
will, the writing would have constituted no part of the will
'A:' Hay *v.* Harden, 6 Barr, 409. Then, if the words at-
tached to the foot of the will 'A' itself could not be pro-
bated as part of that will, because unsigned by the testatrix,
there is far less reason to hold the same words a part of the
will when found indorsed on a mere envelope inclosing the
will. In the nature of things the indorsement of the words
on the back of the envelope was done subsequent to the ex-
ecution of the will 'A,' and could not be a part of the will
itself, nor intended as a part, but were used to identify the
will itself, and point out who were entitled to its custody.
The truth is very manifest, namely, that Elizabeth Fossel-
man contemplated a gift of the $2000 trustee note, and had
no occasion to say anything more definite than what the
signed paper contained. It will be observed that Exhibit
'A' in no manner refers to the writing on the envelope so as
to make the indorsement a part of the will, and the rule is
that a 'reference in a will may be in such terms as to ex-
clude parol testimony, as where it is to papers not yet writ-
ten, or where the description is so vague as to be incapable
of being applied to any instrument in particular. But if
there is a reference to any written document described as
then existing in such terms that it is capable of being ascer-
tained, parol evidence is admissible to ascertain it:' Allen *v.*
Maddock, 11 Moo., P. C., 454; in the Goods of Mary Sun-
derland, deceased, 1 Courts of Probate and Divorce, L. Rep.,
1865–1869, pp. 198, 199, 200. We reach the conclusion that
the indorsement on the envelope is no part of Elizabeth Fos-
selman's will, and that Exhibit 'A' alone can be probated.

"The will then reads thus:

"'Lewistown, October 1–2, 1879.

"'My wish is for you to draw this $2000 for your own
use should I be called off sudden.

"'Elizabeth Fosselman.'

"The next question is, who is 'you?' There are millions
of people in the world who could be addressed as you, and
here is a patent ambiguity on the face of the will. Here,
too, this anomalous will presents what, it is safe to say, has
never occurred before, namely, a bequest in the second person
without naming the legatee. Sir James Wigram's VIth
proposition is: 'Where the words of a will, aided by evi-

[Fosselman *v.* Elder.]

dence of the material facts of the case, are insufficient to determine the testator's meaning, no evidence will be admissible to prove what the testator intended, and the will (except in certain special cases,—see proposition VII) will be void for uncertainty.'

" Proposition VII: 'Notwithstanding the rule of law which makes a will void for uncertainty, where the words, aided by evidence of the material facts of the case, are insufficient to determine the testator's meaning, courts of law, in certain special cases, admit extrinsic evidence of intention to make certain the person or thing intended, where the description of the will is insufficient for the purpose. These cases may be thus defined: Where the object of the testator's bounty, or the subject of disposition (*i. e.*, the person or thing intended), is described in terms which are applicable indifferently to more than one person or thing, evidence is admissible to prove which of the persons or things so described was intended by the testator.' He then enumerates the instances where it has been held that parol evidence is not admissible: 1. To fill up a total blank in a will: Baylis *v.* Attorney-General, 2 Atk., 239 ; Castledon *v.* Turner, 3 Atk., 257 ; Hunt *v.* Hort, 3 Br. C. C., 311 ; or, 2, of inserting a devise omitted by mistake: Lady Newburgh's Case, 5 Madd., 364 ; or, 3, of proving what was intended by an unintelligible word ; . . . or, 31, of ascertaining an intention which, upon the face of the will, was indeterminate, as in case of a devise to one of the sons of A., who hath several sons: 2 Vern. 265 ; and see Altham's Case, 8 Rep. 155.

" It is undoubtedly settled by innumerable cases, both here and in England, that parol evidence cannot be received to explain the intention of a testator, except in two specified cases: 1. Where there is a latent ambiguity arising *dehors* the will, as to the person or subject-matter meant to be described ; and, 2, to rebut a resulting trust: Kent in Mann *v.* Mann, 1 Johns. Ch., 231 ; Wallize *v.* Wallize, 5 Smith, 242, where the authorities are cited.

" In Newell's Appeal, 12 Harris, 199, WOODWARD, J., says: ' A will must be judged *ex visceribus suis,* and unless there be latent ambiguity, extrinsic evidence is not to control its construction, yet it has always been held that a defective designation of the devisee or legatee intended may be repaired by parol proof. If the person to take be not in some sort described in the devise, evidence will not be admitted to show who was intended, for that would be to make a will by parol ; but where there are words of designation, though a mistake of the name, the ambiguity may be removed by evidence *dehors* the will.' So in Best *v.* Hammond, 5 Smith,

412; Brownfield *v.* Brownfield, 8 Harris, 55 ; Domestic and Foreign Missionary Society's Appeal, 6 Casey, 425. The characteristics of all the cases of latent ambiguities are that the words of the will do describe the objects or the subjects intended, and the parol evidence does not vary the instrument, but enables the Court to reject one of the subjects or objects to which the description in the will applies, and determine which of the two was signified by the description used in the will : Doe *v.* Morgan, 1 C. & M., 235; Redfield, 562, note. Redfield, 500–502, says : ' Perhaps a solitary dictum may occasionally be met with . . . in favor of the admission of parol evidence to explain an ambiguity or uncertainty appearing on the face of a will, though Lord Thurlow says there is no such case. If there be, we may venture to say it is no authority. If a will be uncertain or unintelligible on its face it is as if no will had been made, *quod voluit non dixit.'*

" In Still *v.* Hoste, 6 Mad., 192, the bequest was to Sophia Still, daughter of Peter Still. He had two daughters, Selina and Mary Ann. Except for the descriptive addition, ' daughter of Peter Still,' the bequest was clearly void, it appearing that there was no such person as Sophia Still. But that name being rejected, the bequest stood ' to the daughter of Peter Still,' and he having two daughters, this made a clear case of latent ambiguity, and the parol evidence was received to show which daughter was intended. In Price *v.* Price, 4 Ves., 679, the bequest was to —— Price, the son of —— Price ; the plaintiff being the only person claiming it, evidence was received to show that testator said he would provide for the plaintiff, and had left him something in his will. Careless *v.* Careless, 1 Mer., 384 ; the devise was to Robert Careless, my nephew, the son of Joseph Careless. It appeared that testator had no nephew Robert, who was the son of his brother Joseph, as he had in fact no such brother, but he had two nephews Robert, sons of his brothers John and Thomas. The description of the devise was therefore irrelevant and wholly void, and the name only remaining, with the addition of my nephew, was definite enough till it appeared there were two nephews of that name, which made it a clear case of equivocation, according to Lord Bacon's maxim for the admissibility of extrinsic evidence.

" It will be observed that in the cases cited, and indeed in all belonging to the class of latent ambiguities, there is a name, or part of a name, or some designation as nephew or son, sometimes wholly wrong, as in Beaumont *v.* Fell, 2 Peere Williams, 140, still a clue to the intent of the testator ; while in the case before us, there is neither name nor description

[Fosselman v. Elder.]

of the legatee, simply ' my wish is for you to draw,' etc. There is not even a misdescription to show that she meant some person. It is practically a blank, is not so strong or clear as an initial letter, for an initial letter might lead to something. But even an initial letter is insufficient, as shown by Clayton v. Lord Nugent, 13 M. & W., 200, 206. Here the testator did not name any devisees, but gave his real estate first to K., then to —, then to L., then to M., etc. The testator, on a piece of paper attached to the will, at the time of the execution, stated that ' the key and index to the letter, initials, etc., was in a writing case in the drawer of a writing-desk on a card.' After, or at the time of the testator's decease, a card was found in the place designated explaining the meaning of the initials and characters used in the will. This was dated nearly a year before the will, and a witness had seen a similar card before the testator two years before his decease. It was held that the card was not admissible to explain the meaning of the will : Kell v. Charmer, 23 Beaven, 195, may seem in conflict with the case just cited. There testator gave to his son William a legacy expressed thus : i. x. x., and to another son, o. x. x. Testator was a jeweller, accustomed to use certain private marks to denote prices in his business. Extrinsic evidence was given to show that these letters represented the sums of £100 and £200. This case is questioned, and if conceded to be law, it must stand upon the difference between it and Clayton v. Nugent, supra, in this, that characters standing for amounts of money are found in the will itself, whereas in the other case the offer was to incorporate other writings as part of the will not referred to in the body of the will : Clayton v. Nugent, supra, furnishes an additional authority against admitting the indorsement on the back of the envelope to probate as a part of the will of Mrs. Fosselman.

" We have been much embarrassed with this view of the case, to wit : The testator having given the legacy to ' you,' thus designating some one, why may we not show by parol who was intended by the pronoun ? That where the bequest is so given that all living persons are comprehended in the designation, why not, as where the description fits two or more, hear evidence of the intent to give to one of the many ? We answer that while the reasoning is plausible, still we are bound by the rule that patent ambiguities cannot be explained by evidence dehors the will. It is plain that this will does not tell you to whom the legacy is given, and this is the essence of patent ambiguity ; we would then be making a will for the testatrix, because, while she has not given the slightest clue—not even the sex—to enable us to

[Fosselman *v.* Elder.]

discover the object of her bounty, we will do that for her whenever we name anybody as entitled to take.

" We conclude that although the paper ' A ' is the testament of Elizabeth Fosselman, yet it is incapable of execution, and is void for uncertainty ; not so amusing as David Kelley's will in 1 Casey, 460, but quite as incomprehensible without the aid of forbidden evidence.

" As this was an issue to try the ownership of the $2000 note given by the trustees of the Presbyterian Church to Elizabeth Fosselman, on October 2d, 1879, the real purpose was to determine the character of the paper ' A,' and although found to be a will, still being void for uncertainty, the issue must be found against the plaintiff."

Plaintiff took a writ of error, assigning as grounds of error the following :

1. The Court erred in determining in favor of the defendant the question reserved, to wit: Does the envelope addressed " Dear Bella, this is for you to open," taken in connection with the Exhibit " A," to wit :

" Lewistown, October 1–2, 1879.

" My wish is for you to draw this $2000 for your own use should I be called off sudden.

" Elizabeth Fosselman."

Accompanied with the church trustees' $2000 note of October 2d, 1879, constitute a testamentary disposition of the said $2000 note ? Exhibit B.

2. The Court erred in deciding " that the indorsement on the envelope is no part of Elizabeth Fosselman's will, and that Exhibit A alone can be probated."

3. The Court erred in deciding " that although the paper A is the testament of Elizabeth Fosselman, yet it is incapable of execution, and is void for uncertainty."

*A. Reed* for plaintiff in error.

The envelope with the writing inside make a complete instrument. There can be no doubt as to whom the testatrix intended as the object of her bequest. The word "you," on the envelope refers to the person addressed, and she whose name appears on the envelope is the person addressed. There is no certainty that the words on the back of the envelope were written subsequently to the execution of the will. There are those who always write the address on the envelope first and the letter afterward.

The address comes first in natural order. It was not necessary for the testatrix to sign the address on each paper

[Fosselman *v.* Elder.]

on which the will was written. The will may be on distinct and separate papers if they are connected by their internal sense, by cohesion in adaptation of parts : Wikoff's Appeal, 3 Harris, 290.

The true rule as to the admissibility of extrinsic evidence is that where the devisor has finally fixed on any certain person as the object of her bounty, but from the generality or relative character of the words it is uncertain who the person is, extrinsic evidence will be admitted to identify the person, and then the will acts *in propria vigore.* There are exceptions to the rule that extrinsic evidence cannot be admitted to explain a patent ambiguity : Jarman on Wills, vol. i, p. 744 ; 2 Williams on Executors, p. 1294 (Perkins's Notes); Wigram on Wills, 65, 66, 178 ; Doe *v.* Needs, 2 M. & W., 129 ; Smith *v.* Doe d. Jersey, 2 B. & B., 533.

As to whether the envelope should be treated as part of the will, or as evidence to explain it, has been decided in the affirmative as to both points : Goods of James Wedge, 2 Notes of Cases, 14 ; Goods of Jane Taylor, 4 Notes of Cases, 290 ; see also Griscom *v.* Evans, 11 Vroom, 402; and Shore *v.* Wilson, 9 Clark & Finelly, 486.

*A. B. Wanner* and *Frank R. Schell* for defendant in error.

A regular will which expressly excludes the plaintiff in error from taking the note in question is asked to be revoked by the informal, uncertain, and nugatory papers offered for probate as a codicil. There is always a presumption against informal or unfinished papers. In this case the codicil is void for uncertainty. The envelope cannot be admitted to probate because :

1. The codicil does not refer to it.

2. There is no proof that the envelope was written before the codicil was signed.

The presumption is violent that the envelope was written last. If the paper be not in existence at the time of the execution of the will, it cannot be incorporated into it or taken as in any manner testamentary : 1 Jarman on Wills, p. 38, ed. 1881 ; Goods of Hunt, 2 Rob. Ecc. Rep., 622 ; Chambers *v.* McDaniel, 6 Ired. L., 226–229 ; Sanford *v.* Raikes, 1 Mer., 646.

The codicil on its face shows a patent ambiguity, and parol evidence is not admissible to show who was meant by "you :" Castleden *v.* Turner, 3 Atkyns, 257 ; 1 Jarman on Wills, 730.

The cases of Jane Wedge and Jane Taylor do not rule this case. The superscriptions were there on the same paper, and not on a separate envelope.

[Fosselman *v.* Elder.]

The opinion of the Court was delivered by STERRETT, J.

The facts upon which the question of law in this case arose were either admitted or established by the verdict.

In the second item of her will, dated July 18th, 1878, the defendant's testatrix made the following provision for the plaintiff, viz.: "I do will, devise, and bequeath to Isabella Fosselman (who has lived with me many years) the house and lot wherein I now live, together with all the furniture and personal property that may be therein at the time of my decease; by furniture and personal property I mean everything I may have at my decease, except notes and bonds and evidences of debt; and also $1000 in cash, to be paid to her as soon as practicable after my decease; provided nevertheless, the legacies herein bequeathed shall be forfeited if she claims any compensation for services rendered me from my estate." The testatrix having died suddenly in January, 1880, the will was duly probated a few days thereafter, and letters testamentary issued to defendant, the executor therein named. While he and the appraisers were engaged in making the inventory, a sealed envelope was found, among the valuable papers of the deceased, on which the following words addressed to the plaintiff were indorsed, viz.: "Dear Bella, this is for you to open." The envelope was immediately handed to her, and being opened in the presence of the executors and appraisers, it was found to contain a paper of which the following is a copy, viz.:

"LEWISTOWN, October 2d, 1879.

"My wish is for you to draw this $2000 for your own use should I be called off sudden.

"ELIZABETH FOSSELMAN."

It also contained a note for $2000, made by the trustees of the Presbyterian Church of Lewistown, dated October 2d, 1879, and payable to the order of testatrix one year after date, with interest at the rate of five per cent.

After a memorandum of these papers was made by the appraisers, the executor took possession of them, and the right of the plaintiff to collect the note or receive the proceeds thereof having been denied by the residuary legatees, an amicable issue was framed between her and the executor to test her right thereto. On the trial there was no dispute as to any of the material facts. It was conclusively proved by two witnesses that the indorsement on the envelope and the paper, of which the foregoing is a copy, were both in the handwriting of Mrs. Fosselman, and there was not the slightest evidence to cast any suspicion on the integrity of

the transaction. The learned judge submitted the case to the jury with instructions to render a verdict in favor of the plaintiff unless they found that the said indorsement and paper were not genuine, or had been fraudulently altered; subject to the opinion of the Court on the question: Whether the paper of October 2d, 1879, in connection with the accompanying note of same date, and the indorsement on the envelope, is a testamentary disposition of the note or the proceeds thereof.

In his opinion on the reserved question, the learned judge has conclusively shown that the paper referred to is testamentary in its character, intended to take effect upon the death of Mrs. Fosselman, and clearly designated the accompanying note as the subject of the bequest. These conclusions are so fully sustained by both reason and authority, that it is unnecessary to add anything to what has been so well said in the opinion of the Court below on that subject.

The only remaining question is whether the testatrix has sufficiently designated the plaintiff as the object of her bounty in the paper that is claimed to operate as a codicil to her will. The Court below held that she had not, and accordingly entered judgment in favor of defendant *non obstante veredicto*. In this we think there was error. It is true the testamentary paper of October 2d, 1879, does not designate the plaintiff by name, and if we had no written evidence to show who was meant by the pronoun, "you," the bequest of the note would be void for uncertainty, but it is a settled fact that the envelope is addressed to the plaintiff, and why should not that indorsement in the handwriting of the testatrix be taken as a part of the testamentary disposition? It is well settled that a will may be written on several separate pieces of paper. It is not even essential to its validity that the different parts should be physically united; it is sufficient, if they are connected by their internal sense, or by a coherence and adaptation of parts: Wikoff's Appeal, 3 Harris, 281. It was held in Guider v. Farnum, 10 Barr, 98, that where a will is written on several sheets of paper, fastened together by a string, proof by two witnesses of the signature of the testator at the end thereof is sufficient; and that the question whether there has been a subsequent fraudulent addition to, or alteration of, the instrument is for the jury, as in other cases. In the Goods of Wedge, 2 Notes of Cases, a portion of a letter was admitted to probate as the will of Jane Wedge, who on the third page of the letter wrote, and in the presence of two witnesses, as required by the English statute, subscribed her name to the following, viz.:

"When I dey I would like you to bury and take all I got

for your treatment to me and by somethin for your little girl." The subscribing witnesses testified that after the paper was signed and attested, the deceased folded up the letter, and in their presence wrote the superscription it bore. In holding that the paper was clearly entitled to probate, the Court said : " The letter is addressed to Mrs. Henry Host, and by ' you ' the testatrix could mean no other person to be legatee than the person she addressed. I am of opinion, therefore, that the person is executor according to the tenor, and that probate should pass to him." That case is cited with approval in The Goods of Taylor, 4 Notes of Cases, 290, in which Mrs. Taylor made her will in the form of a letter, addressed on the outside to Sir George Simpson, and, after bequeathing her personal effects to her daughter, added the following : " I hereby appoint you my executor to carry this, my will, into effect." Administration with the paper annexed was claimed by the daughter on the ground that no executor was designated in the will ; but the address on the letter was admitted to show that by " you " the testatrix meant Sir George Simpson, the person to whom the letter was addressed, and probate was accordingly decreed to him as executor. In both these cases no envelope was used. The letters were in the form generally in use before the introduction of envelopes, but that fact cannot affect the principle. A separate paper inclosed and sealed up in an envelope is just as much a part of the letter as if the name of the person to whom it is addressed was indorsed on the paper itself. There is no room in either case to doubt that the writing inside is addressed to the person whose name is written outside, and so far as security against fraudulent alteration or substitution of one paper for another is concerned, the one is just as safe as the other before the seal is broken. Either of them is more secure than separate papers attached merely by a string, as in Guider *v.* Farnum, *supra.*

It is also urged as an objection to considering the address on the envelope as a part of the testamentary paper, the former was written after the other was signed, and, therefore, the latter should not be considered as having been signed at the end thereof, as the statute requires; but the objection is without merit. It assumes what may or may not have been the fact. It is not an uncommon thing for persons to indorse the address before writing the letter, but if it were shown affirmatively that the address on the envelope was written last in order of time, it would be unimportant. The natural order of reading ought to control, and that is the name of the party addressed first, and then what is written to or concerning him. If the signature of the writer

[Welchans *v.* Commonwealth *ex. rel.* Shirk.]

is appended to what is written, it fully meets the requirements of the statute.

Without pursuing the subject further, we are of opinion that the inscription on the envelope should be read as the preface to, and in connection with, the paper inclosed therein, and that they together constitute a valid testamentary disposition of the accompanying note, operating as a codicil to the will of the testatrix.

> Judgment reversed, and judgment is now entered in favor of the plaintiff on the question of law reserved.