GRIGSBY LEGATEES v. ESTATE OF NARCISSA WILLIS.

Decided October 24, 1900.

**Will—Codicil—Paper Held Testamentary and Not Undelivered Deed.**

A testatrix duly executed a will, and in connection with it there was offered for probate, as a codocil, a separate paper, signed by her, reciting briefly that she that day gave to her daughter, O. W., her residence place, to have and to hold forever in her own right. This paper was in the handwriting of the testatrix and was acknowledged by her before a notary, and after her death was found in an envelope among her valuable papers, and on the back of the envelope was an indorsement in her handwriting and signed by her, as follows, "For O. W. at or after my death." Held, that the indorsement should be considered in connection with the instrument to which it referred, and so considered the paper was in legal effect a codicil, and not an undelivered deed of gift.

Appeal from Galveston. Tried below before Hon. E. D. Cavin.

*Geo. E. Mann,* for appellants.

*Lovejoy, Sampson & Malevinsky,* for appellee.

GILL, ASSOCIATE JUSTICE.—In this cause the executors named in the will of Narcissa Willis, deceased, offered the will for probate in the probate court of Galveston County, and in connection therewith they offered for probate, as a codicil, a paper in the handwriting of and signed by deceased, together with an indorsement on an envelope also written and signed by her.

R. M. Willis, a son, not named either in the will or proposed codicil, opposed the probate of the formal will, and asked instead that the instrument offered as a codicil be probated as the last will of decedent.

Mrs. Olive Walthew, a daughter of testatrix, and named as beneficiary both in the formal will and in the paper offered as a codicil, joined in the prayer for the probate of both, but joined in the prayer of R. M. Willis for the probate of the second paper, should the probate of the formal will be refused.

The Grigsby legatees, being Mrs. Kate E. Grigsby (a daughter of testatrix) and her children, insisted on the probate of the formal will, but contested the probate of the paper offered as a codicil, on the ground that it was not testamentary in its character, but was merely an undelivered deed of gift.

The County Court admitted both instruments to probate. On appeal of R. M. Willis and the Grigsby legatees the District Court rendered a like decree. From so much of this decree as admitted the second paper to probate as a codicil, the Grigsby legatees have appealed to this court, and here insist that the instrument is not testamentary in its character, but a simple deed of gift, and assign error on the part of the trial court in admitting it to probate.

The instrument in question is as follows:

"GALVESTON, Texas, Nov. 18.

"I, Narcissa Willis, this day give to my daughter Olive Willis Walthew my residence on Broadway and all pertaining thereto, to have and to hold forever in her own right.

(Signed)     "NARCISSA WILLIS."

Subsequent to her death, this instrument (which for convenience will be hereinafter referred to as "the codicil") was found in an open envelope among the valuable papers of decedent. It was in her own handwriting, and was signed by her. It was attested by two witnesses, and acknowledged December 1, 1897, before a notary public, under the circumstances hereinafter detailed. Written on the back of the envelope in which it was found was the following indorsement, in pencil, in the handwriting of and signed by decedent, viz: "For B. Olive Walthew at or after my death." This, for convenience, will hereinafter be referred to as "the indorsement." The facts antedating, attending, and following the execution of the codicil will be related in the order of their occurrence, as evidenced by the findings of fact prepared by the trial judge.

R. S. Willis died testate in 1892, leaving his wife, Narcissa Willis, and the children hereinafter named, surviving him. At the time R. S. Willis made his will his wife, Narcissa, also made a will, but its provisions are not disclosed by the evidence. This will she had prepared by a lawyer.

At the date of her husband's death Narcissa Willis owned about $750,-000 worth of property, consisting of stocks, bonds, negotiable paper, lands, etc. From the date of his death she directly and through agents managed her property and transacted the business connected with its management, and at all times manifested remarkable strength of mind and an unusually clear understanding of her property interests and business affairs generally and in detail. She made close inquiry into all that was done. In 1897 she turned over the management of her estate to the Texas Guaranty and Trust Company, but up to the time of her death her mental vigor was unimpaired, and she fully knew the condition of her business affairs and what was being done with reference thereto.

Within the three years next before her death she signed and acknowledged between two hundred and fifty and five hundred deeds to land and releases of liens upon lands, each time inquiring into and comprehending the details of each transaction. Between the death of R. S. Willis in 1892 and the beginning of the year 1895, she made a will which she procured to be written by one Lawson, an employe of P. J. Willis & Bro., a concern in which she owned an interest. The nature of the provisions of this will do not appear. In 1895 Mrs. Willis showed this will to C. H. Jones, another employe of said firm, explained in detail the changes she desired made, and desired him to write a will embodying her wishes. This he did, but she rejected his draft. He rewrote it, and she approved and executed it. By the terms of this will her residence on Broadway was bequeathed to her daughter, Mrs. Walthew. She frequently stated to Jones that she intended that Mrs. Walthew should have her residence after her death, but always expressed the purpose to retain the ownership of it until her death. Upon the death of one of the executors named in the will last mentioned, she called upon Jones to write her another will, which he did, and she executed it. In this will her residence was again bequeathed to Mrs. Walthew. Soon thereafter Jones suggested to Mrs. Willis that he objected to taking the responsibility of writing her will, and suggested that she procure the best legal talent for the purpose. Acting upon this suggestion she afterwards, but prior to May 10, 1895, had R. V. Davidson, a lawyer of Galveston, to prepare a will for her, which was done after careful and minute instructions from her. In this will she did not bequeath the home on Broadway to Mrs. Walthew, nor was any specific disposition made of it. On the 30th day of September, 1897, she executed yet another will which had also been drawn by said Davidson in pursuance to the instructions of Mrs. Willis, and this will fails to bequeath the home place to Mrs. Walthew, or to specifically dispose of it. This last is the will which was admitted to probate in connection with the codicil hereinbefore named. Mrs. Willis and her attorney had repeated consultations with reference to this will before it was drafted, and after it was brought to her by him she kept it until the following day for the purpose of carefully inspecting it, and on that day, being satisfied with its terms, she executed it according to the forms of law, with two of the trusted employes of P. J. Willis & Bro. as witnesses. She then placed it in the hands of Davidson for safe keeping, and he placed it in an iron safe, where it remained until after the death of the testatrix.

At the time of the execution of said last named will she had four living children, viz., Kate E. Grigsby, B. Olive Walthew, S. A. Willis, and R. M. Willis, and eleven grandchildren, whose names are set out in the trial court's findings, but need not be given here. R. M. Willis took nothing under this will, having been provided for fully during the life of the testatrix. Deceased was frequently heard to say up to within a year of her death that she intended Mrs. Walthew to have her residence at her death. In the spring of 1899 deceased made inquiry as to what the

home place could be sold for, and learned that though it cost $150,000, it would not bring on the market $25,000.

One Artz, a notary public who was in the habit of going to Mrs. Willis to take her acknowledgment to deeds, went to her residence on December 1, 1897, for the purpose of taking her acknowledgment to some such instrument. After concluding his business and when he was about to leave, Mrs. Narcissa Willis requested him to wait, and leaving the room she returned with a sheet of note paper upon which was written in her own handwriting the codicil hereinbefore set out. Concealing all of the writing except the signature, she said to Artz: "I want you to put one of those things—one of those certificates on this document," referring to the writing. Artz, after learning that she wished to acknowledge the paper and that it affected real estate, informed her that he would have to see its contents in order to make a record of it. She replied that she did not wish anyone to know its contents, as it was a "sacred document," and would be known at the "proper time." When Artz convinced her that it was necessary for him to know the nature of the paper, she assented, exacting from him a promise that he would tell no one. It was already signed in her own handwriting when she brought it into the room. She acknowledged it as she would a deed. Artz and Miss K. E. Sanders signed as witnesses. Artz took the paper home with him to append his certificate and seal, and, having done so, returned it to Mrs. Narcissa Willis in a sealed envelope addressed to her. Nothing more was heard of this paper until it was found among her papers after her death. When found it was in the same envelope in which Artz had placed it, and on the envelope was written the indorsement hereinbefore set out. This indorsement was in the handwriting of Mrs. Willis, and was signed by her. It bore no date, nor is there anything by which the date can be fixed, except that the indorsement was made between the date of the acknowledgment and her death. The trial court found fully and in detail the facts attending the discovery of this paper and envelope, but we deem nothing further in that connection material to be stated here. Mrs. Willis died while on a visit to her son, R. M. Willis, at his home in Englewood, N. J. The tin box in which the codicil and indorsement were found she had with her in New Jersey, and just after her death Miss Sanders handed the box to R. M. Willis, stating that it had belonged to his mother, and requesting him to deliver the box to J. P. Alvey, at Galveston, the general manager of the Texas Guaranty and Trust Company, which he did.

The formal will disposed of the entire estate, and that it was properly probated is conceded on this appeal. The paper which was probated as a codicil, if valid as such, has the effect to withdraw from the operation of the terms of the will the Willis residence on Broadway in the city of Galveston, and to pass it absolutely to Mrs. Walthew.

Appellant contends that the instrument is and purports to be nothing more than a deed of gift, based on the consideration of relationship and affection, and as such, if delivered, would have passed title at once to

the grantee. That the indorsement on the envelope can at most be held to postpone the use and enjoyment of the property conveyed, retaining a life estate in the grantor, and that the instrument with the indorsement written in it, instead of on the envelope, would nevertheless be a deed, and not a will, and never having passed out of the grantor's possession, is without effect.

Considered alone, it is clear that it is a deed of gift pure and simple, has none of the elements of a will, and had it been delivered during the lifetime of the testatrix, would have instantly and effectively passed title to the donee. Or had it been delivered by the grantor to some person other than the grantee, with absolute instructions to deliver to the donee at or after the grantor's death, it would have become operative immediately upon delivery to the donee, and could not have been revoked by the grantor after she had parted with its possession.

The disposition of this appeal must then depend upon the effect that ought to be given to the indorsement found upon the envelope, read in connection with the contents of the envelope to which it plainly refers. That it may be read in connection with the paper to which it refers is well settled, it having never been required that a will should be written upon one paper, or, if written upon several pieces, that the various papers should be actually connected or fastened together. Fosselman v. Elder, 98 Pa., 159. Nor is it necessary that a will should be written in any particular form. Papers in the form of absolute deeds have been held to be valid wills, if from the entire instrument might be fairly gathered a purpose on the maker's part to dispose of his property after his death. Nor is it necessary that the testator be conscious that he is making a will, or a paper that would be technically upheld as such. It is sufficient that the effect of his expressed purpose is to devise his estate or a part of it, and that the instrument by which it is undertaken is revocable in its nature. "Whether the maker would have called it a deed or a will is one question. Whether it shall operate as a deed or a will is a distinct question, which is to be governed by the provisions in the instrument." Schoul. on Wills, sec. 272. Should he undertake to devise by means of a deed, call the instrument a deed, actually believe at the time that acknowledgment and record were necessary to its validity, yet if no present interest is passed, and the expressed purpose of the maker is that the instrument is to take effect at death, the courts will give effect to such instrument and not allow the purpose of the decedent to fail.

In a California case, In re Skerrett's Estate, 67 California, 585, the court gave controlling effect to a letter addressed to the devisee, found in an envelope with copy of an absolute deed, which conveyed to her certain property, though the rather vague testamentary words were found in the letter and were entirely absent from the copy. The original of the deed had never been delivered.

On the other hand, one who wishes to control the disposition of his estate after his death must adopt some lawful means for the accomplishment of his purpose. So, if a deed of gift devoid of testamentary words

be found among the valuable papers of decedent, it can not be given the effect of a will, even though it should be shown by parol that the maker believed and intended it as a will. To adopt such a rule would be dangerous, because of the law·requiring delivery of deeds to render them effective. The maker of a deed is presumed to know that delivery is necessary to its validity, and so long as he retains possession is presumed not to have finally decided to execute it. If undelivered deeds found in possession of the maker at death could be established as wills by resorting to parol proof of the maker's wishes, it would open the door to fraud, and serve to defeat the purpose of the statutes requiring wills to be in writing and prescribing certain safe modes of proof. Stillwell v. Hubbard, 20 Wend. (N. Y.), 46.

For a similar reason parol evidence may not be resorted to for the purpose of engrafting on a will the wishes of the testator not expressed in the writing, nor to change, modify, or eliminate any of its material provisions. 1 Jarm. on Wills, 409.

The rule governing the extent to which parol evidence may be resorted to in the construction and enforcement of such instruments is thus stated by Mr. Jarman: "Extrinsic evidence is not admissible to alter, detract from, or add to the terms of a will, but may be used to rebut a resulting trust, or to remove a latent ambiguity arising from words equally descriptive of two or more subjects or objects of gift." Jarm. Rules of Con., rule 8; 1 Redf. on Wills, 426, note. The question here is, what does the language of the maker mean; it being admitted that the language of the instrument is the language of the maker? We think it clear, therefore, that the rule applies to the present inquiry. Whatever then may be the fair inference to be drawn from the mass of parol evidence adduced without objection upon the trial of this cause, it can not be given the effect to transform the instrument in question into a will if a deed, nor into a deed if a will, but may perhaps be useful under the rule that it is permissible to read such instruments in the light of the environment of the maker. Schoul. on Wills, sec. 273. What meaning can then be fairly gathered from the indorsement on the envelope, read in connection with the inclosure to which it refers? The language of the inclosure is such as is usual in a deed of gift, though much more concise than deeds are usually written. The word "give" is not inappropriate to a will. The expression "I this day give" becomes of no significance when read in connection with the indorsement, because the latter, if properly treated as part of the instrument inclosed, limits those words, and clearly evinces a purpose that no effect shall be given to the writing until the maker's death.

"A will is an instrument by which a person makes a disposition of his property to take effect after his decease and which is in its own nature ambulatory and revocable during life." 1 Jarm. on Wills, 17.

We think in this case the maker, at the time the indorsement was written on the envelope, clearly undertook to dispose of a part of her property after her decease. Whatever may have been her intention when

she acknowledged the instrument before the notary, it is plain that she subsequently decided to limit its terms so as not to deprive her of absolute control during her life. When the indorsement was made she thereby made the inclosed writing a part of her wish thus expressed in writing and thereby destined the property her daughter, Mrs. Walthew, after the maker's death. That she may have believed it would operate as a deed, and escape the necessity of probate, is immaterial, if the intention to devise is evidenced.

Had the indorsement been written in the deed and above her signature, it would have equally conveyed an intention that the paper should take effect only after her death. While it might in that form have been capable of being construed as a deed to take effect in futuro, it could not on principle have been held to convey the property in remainder, retaining a life estate in the donor, for no such purpose is shown by the language if thus arranged.

"The great criterion of a testamentary disposition is that by intendment it takes effect at the death of the maker, vesting no earlier interest in the beneficiary." Schoul. on Wills, sec. 274, p. 282.

It can hardly be questioned that it was the desire and purpose of Mrs. Willis at her death to give this property to Mrs. Walthew, and this purpose may safely be gathered from the writing itself, without resorting to parol, though the parol evidence adduced strengthens this conclusion. There is no allegation of fraud. No question is made as to the genuineness of the papers, or that they were written and signed with the decedent's own hand.

Many of the cases cited by the text writers, and from which they have evolved the rules announced, were decided at a time and in jurisdictions where deeds conveying no present interest, but intended to take effect in futuro (as upon the maker's death) were held invalid, or else construed to be wills when intended to become operative upon the death of the maker. Scoul. on Wills, sec. 276. In this State by our statute (Revised Statutes, article 632) such deeds are authorized. In Chrisman v. Wyatt, 7 Texas Civil Appeals, 40, the instrument in question was based upon love and affection, was in the form of a deed, and was delivered at the date of its execution. It was provided therein that the full ownership and control was reserved in the grantor during his natural life. The court held it a deed and not a will, and the opinion indicates that article 632, supra, had much weight with the court. It is clear that such instrument was not a will, but we think it equally clear that it was a deed with reservation of a life estate, and would have been valid as such independent of the statute. Should the existence of the article cited be permitted to defeat the probate of an instrument fairly appearing to be testamentary simply because it may also be held to come within the terms of the article permitting such deeds to be made? We think not. Nor is it entirely clear that the Legislature intended by the provisions of said article to include instruments which conveyed no present interest, and

became operative only on the death of the maker.   Courts have not infrequently accorded great weight to the fact that the maker retained possession of the paper, and have permitted that fact to give to the instrument the revocable character which the language employed failed to supply.   Schoul. on Wills, sec. 268, p. 276.   But it is difficult to determine from the authorities just what weight should be given this fact, or whether it is proper to allow it to control in any case.

We are aware that the question presented is one of great difficulty.   We have been impressed with the force of appellant's contention that it can not be ascertained with certainty whether the maker, regarding the instrument as a deed, decided after making the indorsement that she would not give it effect by delivery, and died in that state of mind.   We think, however, that her intention in that respect may be fairly inferred from the circumstances of her retention of the instrument among her valuable papers; that she expected it to be found, and that it would serve to accomplish her expressed wish as evidenced by the indorsement on the envelope.

It would serve no useful purpose to undertake a review of the vast number of authorities cited in the able briefs of counsel.   Both the "codicil" and "indorsement" were written and signed by the maker, and satisfy our statutory requirements as to holographic wills, and since it did not revoke her prior will by which her entire estate was devised, it was in legal effect a codicil and properly probated as such.   Fosselman v. Elder, supra.

We are of opinion that the judgment of the trial court should be affirmed.

*Affirmed.*

Writ or error refused.