## Davis' Estate

Before Van Dusen, P. J., Stearne, Sinkler, Klein, Bolger, and Ladner, JJ.

*C. Russell Phillips*, of *Montgomery & McCracken*, for appellant.

*Mercer L. Lewis* and *John E. Stevenson*, Special Deputy Attorney General, for appellees.

BOLGER, J., February 6, 1942.—The persons contesting the will are collaterals whose status is challenged by exceptant. This point raised by the first exception is rendered moot by reason of the formal appearance of the Attorney General, who claims the estate by way of possible escheat. However, this does not mean that contestants are no longer proper parties because it is essential in will contests to have all possible claimants, including all possible heirs of record, so that they may all have their day in court at the same time upon the determination of the validity of the will. Likewise it does not mean that for all purposes contestants have established their claims as heirs. They are, as stated in the opinion of the hearing judge, "parties entitled to contest the writings here presented for probate". What their status will be at the audit of the account of the assets of the estate by the appropriate accounting officer must necessarily remain open until that time.

The second exception relates to the refusal of the hearing judge to reverse the action of the register in refusing to probate two submitted writings as the last will of testator. Exceptant argues most strenuously that the integrity of testator's act is clearly demonstrated.

Testator, a man in his late fifties, lived alone. About four days before he died, he sent for one Martha Bowling, who resided a few blocks away as the guest of one Mary Hill. The latter, not related to testator, but a close friend for 25 years, worked as a domestic six days of the week, returning home every Thursday. She was not at home when Martha Bowling was summoned. A messenger took Martha to testator's room where Mr. Davis was sitting on the side of his bed. He told her that he was going to the hospital for one week, whereupon he arose, sat at the dresser and wrote a paper and signed his name to it. This writing was as follows:

"Phila., Pa.
Dear Sister Marry
I want you take
care of my bank
Book if I die
turn it over to
James E. Davis
2204 Ingersoll
St."

He then went to the dresser from which he obtained a card and his bank book. The book was a deposit book of the Philadelphia Saving Fund Society which reflected testator's deposits in an amount in excess of $8,000. The card, constituting the second writing of the claimed testamentary instrument, contained on one side in the handwriting of decedent the name

"Thelma Moore
113 Second St.
New Rochell
New York"

The obverse side contained printed matter reading as follows:

"Rev. J. C. Harris
Distributor for
Laly Mineral Compound
The Tonic for Constipation, Indigestion
and many other ailments
1861 Judson St.        Philadelphia, Pa."

He then put the bank book in the first paper and the card "up on top" and he said "turn my bank book over to sister Marry and if I should die, I want Thelma Moore to get my money in the bank". Whereupon, he put a rubber band around these three articles and placed all of them in a book and gave them thus to Martha Bowling who thereupon took them to her room in Mary Hill's residence and kept them there untouched until the next day, which was Thursday, when Mary

returned. She then gave them to Mary. It is significant that testator's actions occurred in the presence only of Martha Bowling. It appears that Mary examined the papers and found that the card was in the bank book and the first writing was on the outside of the book with the band around it. Mary Hill took them with her the next day when she returned to her place of employment in Stonehurst. There she handed them to her employer, Mrs. Staley, who put them upstairs in a bureau drawer. Mrs. Staley made copies of the writings and kept them until she reached Thelma Moore, sometime after testator's death and burial, when she sent them to her in Brooklyn, N. Y. Mrs. Staley did not, at the same time, send the deposit book to Thelma Moore, but took it to the Philadelphia Saving Fund Society. Proponent insisted that the side of the card containing her name is part of the signed writing and that its proper place is following the words "turn it over to . . ."

The hearing judge in dismissing the appeal held that there is no inherent connection between the language of the two writings, citing Seiter's Estate, 265 Pa. 202, and Maginn's Estate, 278 Pa. 89; that the card containing the written name of Thelma Moore has no inherent connection with the first writing made by decedent; further that, if the two writings be considered the will of decedent, it was not signed at the end thereof as required by the Wills Act of June 7, 1917, P. L. 403, the name of the testator appearing only on the first writing; and, finally, that the language of the first writing is too ambiguous to be given effect, that it does not contain words of gift, but refers merely to the turning over of the bank book to decedent himself, in the event of his death, from which it might be inferred that it should be turned over to the personal representative of his estate. We find no error in these rulings.

Exceptant relies principally upon the decision in Fosselman v. Elder, Exec., etc., 98 Pa. 159, where the

executor, following testatrix's death, found among her papers a sealed envelope containing a superscription in testatrix's handwriting as follows:

"Dear Bella
    This is for you to open".

The executor summoned Bella and in her presence and in the presence of another witness the envelope was opened disclosing therein a promissory note of a third party for $2,000 and the following writing in testatrix's hand:

"Lewistown, October 2, 1879
My wish is for you to draw this 2,000 dollars
for your own use should I be called off sudden.
    Elizabeth Fosselman."

It was held that the endorsement on the envelope and the contents of the envelope together constituted a will of the note to Bella; that this instrument operated as a codicil to testatrix's will.

We cannot agree that the cited case is controlling. Its facts are readily distinguishable from those in the instant case, and furthermore it has not been cited by our appellate courts to any extent, which would not warrant us in regarding it as high authority, especially in the light of the more recent abundant decisions.

The Supreme Court there said (p. 170) that "A separate paper enclosed and sealed up in an envelope is just as much a part of the letter as if the name of the person to whom it is addressed was indorsed on the paper itself. There is no room in either case to doubt that the writing inside is addressed to the person whose name is written outside; and so far as security against fraudulent alteration or substitution of one paper for another is concerned, the one is just as safe as the other before the seal is broken. Either of them is more secure than separate papers attached merely by a string . . . ."

Here the two writings cannot in any sense be regarded as one instrument and the possibilities of fraud or of voluntary substitution are unlimited. We have nothing to associate the two writings except the oral statement of testator as related by one witness plus the possible juxtaposition of the writings. Were the witness' testimony of testator's oral statement not before us, and we are prohibited from considering it since oral declarations form no part of the testamentary act, we would have to make a wild guess as to what significance testator desired to place upon the presence of the name of Thelma Moore upon the card. Obviously, this we cannot do. In addition, the fact that the account of testator's actions is given to us by only one witness offends section 2 of the Wills Act, which requires the testimony of two witnesses of testator's performance of his testamentary act. In fine it would be difficult to conceive of a set of facts where the rulings of our appellate court herein cited have more cogent application than in this case.

Our reading of the testimony does not support exceptant's very zealous argument that the sequence of the acts of testator places his two writings in juxtaposition. The foregoing recital of the evidence places one of the writings inside of the deposit book and the other on the outside thereof. However, the position of the papers and of the pass book is inconsequential in the light of the authorities relied upon hereinafter.

Not only are the cases cited by the hearing judge controlling, but we believe Baker's Estate, 331 Pa. 33, flatly rules the question. There testatrix first wrote her will, then later obliterated certain parts by placing pencil lines over them. She later pinned two separate pieces of paper over the obliterated parts, both in her own handwriting, the first unsigned, the second containing her signature. It was held that the first, unsigned, paper thus attached to the will constituted no part thereof, that although each paper was pinned

to the typewritten will they were physically separated from each other, and that neither was connected or correlated by internal sense. Justice Stern on page 35 in writing the opinion reiterated what seems to us the governing aspect of our case, when he repeated what was said in Seiter's Estate, supra, p. 207:

" 'There is nothing in any one of the papers, that refers to a matter or thing in the others; nor is there anything by reference, history or recital that would have a tendency to connect the papers; . . . Each paper standing alone contains an independent, completed thought . . . *There must be something in all the papers in addition to such physical connection to make a last will.* It must spring from the papers themselves and each be shown, either by their relation, recital, reference, natural sequence or continuity of sense, in a word, internal sense, to be part and parcel of a whole. . . . The reference must be complete in the papers themselves.' " (Italics supplied.)

The concluding paragraph of the opinion is particularly appropriate to the determination of this case (p. 36) :

"To permit the probate of such a paper as 'Exhibit B' would be to legalize a practice by which testators, instead of formally executing codicils in the manner prescribed by the statute, could pin unsigned scraps of paper to their wills, and later remove and replace them at pleasure as their testamentary plans changed from time to time. It would also enable evilly-disposed persons to pin to the will of a testator fragmentary slips which he may have discarded or prepared only tentatively, or to remove similar pieces which he had pinned thereto. Thus the way would be opened to unbounded possibilities of fraud".

Surely, if testatrix's action in pinning the disputed writing to her admitted will was ineffectual, so much the more must we here refuse to accept as part of a testamentary instrument a wholly disconnected paper.

Here the card could have been interchanged with others from time to time with perfect freedom at testator's pleasure if the instrument remained in his possession or, what would have been more flagrant, by someone else when it was not in his possession, before or after his death. Thus the requirements of the Wills Act pertaining to the execution as well as to the revocation of wills would have been nullified. Other instances of like facts receiving similar treatment are Jacoby's Estate, 190 Pa. 382, and Fisher's Estate, 283 Pa. 282.

It is no doubt most aggravating to persons deprived of interests under wills because of defective execution thereof. However, exceptant here is in no better position than were the legatees in Bryen's Estate, 328 Pa. 122, where testator inadvertently signed the wrong page thinking he was executing what later was presented for probate as his will. Justice Stern there said the obvious truth of the matter was that he had made a mistake; that while this mistake was regrettable, it could not be judicially corrected, the situation thus created had to be accepted as it existed; that the question is not what a testator mistakenly thinks he is doing, but what he actually does, citing Churchill's Estate, 260 Pa. 94, and concluding with the admonition that it is of paramount importance to uphold the legal requirements as to the execution of wills so that the possibility of fraud may be reduced to a minimum.

We do not regard it as essential to examine further the pertinent line of cases; many of them are cited in Bryen's Estate, 328 Pa. 122; the latest is Rosenthal's Estate, 339 Pa. 488.

The exceptions are dismissed, and the decree of the hearing judge is confirmed.