## Womack's Estate.

*Wills—Construction—Gift to religious use—Will unattested—Invalid devise.*

Where testator by will provided, "This to Certify to all to whom is consernd that Dr. Thos. T. Womack of 1035 S. 17th St. will to James Jr. Lennon Jr. of 17th & Fitzwater St. 1,000. To, the house keeper, whom every she may be $3,000, and to the Church Rev. Tinley the rest, Baring $5,000." The gift in the final clauses was to the church and not to the Reverend Tindley mentioned, and the will being unattested such devise was invalid and testator's next of kin is entitled to the amount so bequeathed.

Argued March 21, 1916. Appeal, No. 444, Jan. T., 1915, by Charles A. Tindley, from decree of O. C. Philadelphia Co., July T., 1914, No. 52, dismissing exceptions to adjudication in Estate of Thomas T. Womack, Deceased. Before BROWN, C. J., MESTREZAT, POTTER, MOSCHZISKER and FRAZER, JJ. Affirmed.

Exceptions to adjudication.

The adjudication of GEST, J., was in part as follows:

Thomas T. Womack died on March 28, 1914, unmarried, leaving a will, dated September 27, 1913, admitted to probate April 21, 1914, when, no executors being named in the will, letters of administration c. t. a. were granted to the present accountant. A photographic copy of the will is annexed hereto. The will, which is a testamentary curiosity, was badly written, and the legibility of certain words particularly was disputed by the learned counsel for the parties. The auditing judge reads it as follows:

"Philadelphia, Pa., Sept. 27th, 1913.

"This to certify to all to whom is consernd that Dr. Thos. T. Womack of 1035 S. 17th St. will to James Jr. Lennon Jr. of 17th & Fitzwater St. 1,000. To, the house

keeper, whom every she may be $3,000, and to the Church Rev. Tinley the rest, Baring $5,000.

"DR. T. T. WOMACK."

The will was not attested by two subscribing witnesses and it was conceded that any legacy to a religious use was therefore invalid.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

When the testator mentioned "the church," the auditing judge is of the opinion that he intended the East Calvary Methodist Episcopal Church; that is to say the church on Broad street below Fitzwater,......not very far from the testator's residence: the minister of this church is Rev. Charles A. Tindley, who testified that the testator joined his church something over a year before his death.   Before that, the Rev. Tindley had known the testator slightly about ten years and quite well for about three years, but the testator and he did not visit one another at their homes.   The testator began attending the church about nine months before his death.   Of course any legacy to the church would be invalid under the Act of April 26, 1855, 328, 4 Stew. Purd. 4113, and the auditing judge is of the opinion that the additional words in the will "Rev. Tindley" were merely used to identify the church and not intended to designate the Reverend Tindley as legatee.   In this connection it will be observed that the words are "to the Church Rev. Tinley the rest" followed by a comma, the words "Rev. Tinley" following closely the words "the church" and not separated by a comma as the copy annexed to the letters testamentary originally transcribed it.

It was not disputed, and indeed the evidence was clear, that Charles A. Tindley was the only clergyman of the name of Tindley or Tinley with whom the testator was acquainted, and nothing could be more natural than for a testator, in leaving a legacy to the church, to make clear by linking with it the name of the minister just what church he meant.   In fact every one knows of instances where other churches have been familiarly

spoken of by the name of their distinguished preachers. Henry Ward Beecher's Church and Spurgeon's Tabernacle are well-known examples.

The contrary construction urged so zealously by Mr. Dickerson, the learned counsel for Rev. Mr. Tindley, appears to the auditing judge to involve the insertion of words in the will which the testator did not write in it or intend. His ingenious theory was that the testator bequeathed a legacy to the church equal in amount to that given to the housekeeper, and to Rev. Tindley the rest or residue, so that the will should read: "To the housekeeper whomever she may be $3,000 and to the church (the same) Rev. Tinley the rest, being 5,000"; the penultimate word, according to this theory, should be read "being" and not "baring" or "barring." In support of this argument, it was shown that the testator had accumulated $12,000. Of this he gave to James Lennon $1,000; to the housekeeper $3,000, to the church (according to this theory) $3,000 and to Rev. Tinley the rest, which would be $5,000, the testator thus estimating the amount of the residue. It would seem, as urged by Mr. Parks, extremely improbable that the testator intended to give the residue of his estate to a clergyman of whom he knew merely as the pastor of the church he had attended a comparatively short time before he made the will, but perhaps much reliance should not be placed upon this argument as the testator shows similar liberality to his unnamed housekeeper whomever she might be in bequeathing her one-fourth of his estate. An effort indeed was made to prove that the decedent mentioned his intention to remember the Rev. Tindley in his will, which testimony the auditing judge excluded. While parol evidence is competent and was in this case admitted to show the person whom the testator intended by Rev. Tinley and the identity of the church and the identity of the housekeeper to whom the bequest is made, yet that is very different from supplying by parol those necessary dispositive words establishing the gift itself and

from which the testator himself did not insert. See on
......this point Johnson's App., 3 W. N. C. 52; Wust-
hoff v. Dracourt, 3 Watts 240; Appel v. Byers, 98
Pa. 479; Root's Est., 187 Pa. 118. And this is espe-
cially true as the offer in one instance was merely that
the testator intended "to remember the Rev. Tindley in
his will," which intention would be fulfilled by a legacy
to the church with which the reverend clergyman was
connected, and in the second case the offer was to prove
that the testator declared his intention to bequeath to
Rev. Tindley $500, which is totally inconsistent with the
will as written, which, if it means anything in favor of
Rev. Tindley individually amounts to a bequest of the
entire residue or the residue less $5,000.

But the construction urged by counsel cannot be
adopted as it would require the court to supply after the
word "church" the figures 3,000 or the words "the same,"
for construction cannot assume the proportions of ref-
ormation, and nothing is more dangerous in the con-
struction or interpretation of wills than the insertion of
words that the testator himself has not written. It is
true that the testator wrote a very illegible hand and the
internal evidence of the will would indicate that he was
very illiterate and by no means that he was a graduate
of Lincoln College and Howard University and besides
licensed to practice in this State and actually in practice
here. Yet the auditing judge does not find it possible
to read this word as "being." It is "baring" and the
testator must have intended "barring," that is except.
The natural question arises what did he mean by that.
Why should a testator give the rest or residue of his
estate to a legatee barring or except $5,000, and deliber-
ately die intestate as to that sum? The answer is not
evident. The theory of the auditing judge would be that
the testator intended to give certain pecuniary legacies
and "to the church of Rev. Tinley the rest barring (what
I have given to others that is) $5,000." The difficulty is
that the legacies expressed amount to $4,000 and not

$5,000, and perhaps no better explanation can be suggested than that the testator wrote 5,000 by error for 4,000. The question is perhaps more difficult than important, for, as the auditing judge is satisfied that Sallie Patterson is the mother and next of kin, she would be entitled to the $5,000 if the decedent died intestate with respect thereto, and as she would take the legacy to the church, this being invalid under the act of assembly, it makes no difference whether the $5,000 is regarded as intestate estate or included in an invalid legacy.

Sur exceptions to the adjudication: DALLETT, P. J., filed the following opinion:

Whether or not Sallie Patterson is this testator's mother is purely a question of fact as to which in the absence of clear error the finding of the auditing judge is conclusive (May's Est., 11 Pa. D. R. 178). We have examined the evidence and think it fully sufficient to justify his finding that she is the testator's mother.

The interpretation of the will presents a more difficult question. The auditing judge aptly refers to it as a "testamentary curiosity." He awarded $1,000 to James Lennon, Jr., $3,000 to Jeanette Simms, shown to have been the testator's housekeeper at the date of the execution of his will as well as at the date of his death, and, holding that the testator's gift to "the Church Rev. Tinley the rest" was a gift to the church and invalid because the will was not attested by two subscribing witnesses, awarded residue to Sallie Patterson as next of kin.

We have sought in vain for an interpretation which would be more reasonable than the one adopted by the auditing judge. Any must be subject to criticism (Kelley v. Kelley, 25 Pa. 460).

"It is a maxim" however as was said by Mr. Justice ROGERS in Bender v. Dietrick (7 W. & S. 284, 287), "which applies here as well as in England that an heir-at-law can only be disinherited by express devise or necessary implication." This rule fairly justifies the auditing judge's finding.

All exceptions are dismissed and the adjudication is confirmed absolutely.

The court in banc dismissed the exceptions to the adjudication.    Charles A. Tindley appealed.

*Error assigned,* among others, was in dismissing exceptions to the adjudication.

*G. Edward Dickerson,* for appellant.

*John W. Parks,* for appellee.

PER CURIAM, April 17, 1916:

The will of the testator is aptly termed by the adjudicating judge a "testamentary curiosity." His correct conclusion, followed by the court in banc, was that the bequest claimed by the appellant was not to him, but to his church, and the execution of the will not having been attested by any witness, the charitable bequest fell.

Appeal dismissed at appellant's costs.