McKean Estate.

Argued April 22, 1946. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

410

*John P. Vallilee,* for appellant.

*C. Wayne Smyth,* with him *Scott R. McKean, Joseph H. Blackwell* and *Herbert McKean,* for appellees.

OPINION BY DITHRICH, J., July 19, 1946:

This consolidated appeal is from two decrees of the Orphans' Court of Bradford County, one sustaining the probate of a writing as part of a will, and the other dismissing exceptions to the first and final account of the executor under said will.

Jennie L. McKean, a widow, on March 21, 1944, three days before her death, dictated to her nurse a formal will which she signed and had witnessed by the nurse and Elizabeth Haight, her housekeeper. About ten days before executing the will which the nurse had prepared at her dictation, she had the nurse go to the bank and bring to her from her safe deposit box a former will which she directed the nurse to destroy and which was destroyed by burning. No one has any knowledge of its contents.

The will dated March 21, 1944, and hereinafter referred to as "Ex. A." made a number of specific bequests but contained no residuary clause nor did it contain any revocative clause. At the direction of the testatrix it was placed in a large envelope in a secret drawer of the dresser in her bedroom. After her death, in addition to "Ex. A" the large envelope was found to contain a smaller envelope in which there was enclosed a writing hereinafter referred to as "Ex. B." It was in the form

of a letter from the testatrix to her stepson, Scott R. McKean, who was appointed sole executor of her will. The present controversy centers about the validity of "Ex. B," the appeal from the probate of "Ex. A" having been dismissed by the court below with consent of appellants.

"Ex. B," which admittedly is in the handwriting of Mrs. McKean and on one of her letterheads, is as follows:

> Dear Scott
>     The two notes in the tin box in the drawer in my desk one from Joe & one from Herb please distroy [sic] all other things you do as you think best.                              Mother.

The learned president judge of the court below not only determined that "Ex. B" is testamentary in character, with which conclusion we agree, but that "all other things you do as you think best" was a declaration of intention "that the residuary estate was to be Scott's to do with as he saw fit," a conclusion with which we cannot agree.

"Ex B" was not dated and the evidence does not disclose when it was written nor when it was placed in the envelope with "Ex. A." But it apparently was placed there before "Ex. A" since the nurse who put "Ex. A" in the envelope knew nothing about "Ex. B" and Mrs. McKean could not have placed it there herself since she never left her bed during the three days that elapsed between the signing of "Ex. A" and her death. However, we do not attach much importance to whether "Ex. B" was written before or after "Ex. A" except that if written before it could not be considered as a codicil to "Ex. A." The salient facts are that it was placed for safekeeping with the formal will, that it was addressed to the executor of her estate and not delivered to him during her lifetime, and that the two notes which he was directed to destroy were also kept "in the tin box in the drawer in my desk." These facts are all evidence from

which it could properly be determined that in respect to the two notes the informal writing was a disposition of property to take effect after the death of the writer, and while precatory was none the less testamentary. *Knox's Est.*, 131 Pa. 220, 18 A. 1021; *Gaston's Est.*, 188 Pa. 374, 41 A. 529; *Kimmel's Est.*, 278 Pa. 435, 123 A. 405. The direction to destroy the two notes, the "one from Joe" being a demand judgment note of J. H. and Sara H. Blackwell in the amount of $500.00 and the "one from Herb" being a demand judgment note of Herbert B. McKean in the amount of $3,000.00, was correctly held to be "a forgiving of that indebtedness" and disposed of what otherwise would have been assets of the estate.

But in respect to the language, "all other things you do as you think best," which the court below construed as a residuary clause, we consider it so vague and so indefinite as to render its purpose and meaning incomprehensible and entirely without dispositive effect. It is void for uncertainty. *Kelley v. Kelley*, 25 Pa. 460; *Womack's Est.*, 253 Pa. 384, 98 A. 611; *Wise v. Rupp*, 269 Pa. 505, 112 A. 548.

The court below, in order to save the residue of the estate from intestacy, employed certain well-known rules of construction that are frequently an aid in discovery of the testamentary intent, but when the wording of the latter part of this writing is subjected to the tests of all the rules that can be arrayed in support of testacy, it is still without dispositive effect. "The rights conferred by the intestate laws are only taken away by a will which effectually *disposes of the entire estate of the decedent;* and, while a construction is not to be adopted if it can be avoided, which will lead to an intestacy, interpretation is never to assume the proportions of reformation. The question is confined to the meaning of what the testator has said, and does not extend to the consideration of what he might have said but did not." (Underscoring supplied) *DeSilver's Est.*, 142 Pa. 74, 75, 76, 21 A. 882. It may well be that testatrix thought

that under the intestate law the residue of her estate, which consisted of stocks and bonds of a value of approximately $13,000.00, would go to her stepson whom she apparently looked upon as her own son and frequently stated that on her death all of her property would be his, and may account for the omission of a residuary clause in the will. It at least appears to be a more logical and reasonable conclusion than that the omission of a residuary clause was because the residue of the estate had already been disposed of in the informal writing which was admitted as part of the will. But whatever the testatrix may have meant by the words, "all other things you do as you think best," in our opinion proponent has failed to meet the burden that rested upon him of proving that she thereby intended to leave the residue of the estate to him. This would supply the omission in the will to leave him anything or to dispose of the remainder of her estate, but it would require a forced, strained, and arbitrary construction beyond all reason.

We are not unmindful of the presumption against partial intestacy, but at the same time we must not overlook the presumption against disinheritance even though the contest is between nieces and nephews and a stepson, no matter how close the latter may have been to the testatrix. "While it is a presumption that the testator intended to dispose of his whole estate, there is a like presumption of equal force that the heir is never to be disinherited except by plain words or necessary implication. These presumptions, we have frequently said, are of like force and effect, and in applying one, we must not overlook the other . . . There is no general residuary clause in the will, nor does the testator expressly declare his intention to dispose of his entire estate . . . If he sees fit for any reason not to dispose of any part of his estate, or such is the result of ignorance or oversight, the courts cannot supply the gap or hiatus and reconstruct the will. To do so would be a perversion of

the functions of the court, and deprive a testator of the right to dispose of his property:" *Grothe's Est.*, 229 Pa. 186, 190, 192, 78 A. 88. See also *Watson v. Martin*, 228 Pa. 248, 77 A. 450.

The assignments of error are sustained in part and an intestacy declared as to the residuary estate; the account to be restated in accordance with this opinion, and the decrees of the court below are affirmed as modified.

The costs to be divided equally between the parties.