## Wise's Estate

*S. E. Troutman*, for exceptants.
*William S. Morrow*, contra.

RICE, P. J., July 12, 1947.—This matter comes before the court on exceptions to the report of an auditor, who had been appointed to pass upon exceptions to the statement of proposed distribution and make distribution of the balance in the hands of the executors according to their account, which was confirmed without exceptions. The distribution statement proposed to divide the balance for distribution among the four children of testatrix as legatees designated in the will, but the exceptions to the distribution statement averred that testatrix was survived also by a grandchild, the daughter of a predeceased son of testatrix, and claimed an equal share for such granddaughter as one of the next of kin of testatrix. The auditor sustained these exceptions and awarded an equal one-fifth share to such granddaughter. His action is now challenged by four exceptions, which do not relate to any findings of fact of the auditor but allege error in his legal conclusions including the grandchild in the distribution.

The auditor finds as facts that testatrix, Clara M. Wise, died October 7, 1945, without leaving a husband to survive her, but leaving to survive her issue as follows, namely: (1) Harry L. Wise, a son; (2) Carrie I. Eckerd, a daughter; (3) Mary L. Hollenbaugh, a daughter; (4) Clara C. Robinson, a daughter; and (5) Elinor Ann Wise, a minor granddaughter, whose father, Charles L. Wise, a son of testatrix, died June 4, 1938, and who has James C. Wilson as her legally appointed guardian. The auditor also finds as a fact that testatrix had made a last will and testament reading as follows:

"On the first day of October 1943 I do make my will I asked that Harry L wise and Carrie I Eckerd be my Excetters and that they sell all my property personal and real state and pay all bills and divide remainder between the four of you. and if there is here of any thing belong to any of you four each is to have his and if want to devide it if you can suite every body."

"Mother"

Although the auditor makes no findings as to the nature or characteristics of the will, it is very apparent, from an inspection of the original on file, that it was all written by one person, including the signature, "Mother", with a lead pencil, on one sheet of paper, and is holographic in character.

In Burtt Will, 353 Pa. 217, 221, the Supreme Court said:

"A will is defined by Blackstone, Vol. II—*449, as 'The legal declaration of a man's intentions, which he wills to be performed after his death.' It has been declared that this definition stands unchallenged for its simplicity and accuracy: McCune's Estate, 265 Pa. 523; Gibson's Estate, 128 Pa. Superior Ct. 44."

"The intention of the testator must be found from what appears upon the face of the will, and, while extrinsic evidence may be admitted to aid or explain, it must always relate to that which is embodied in the will": Reinheimer's Estate, 265 Pa. 185, 189.

Particularly apposite to the pending case is the following quotation from the opinion in Conner's Estate, 346 Pa. 271, 273:

"While this is a layman's will in the handwriting of testatrix, and it is proper to explore the four corners of the will in the light of the circumstances under which it was written to discover her testamentary intent, we must keep in mind that it is not the province of the court 'to consider what the testator possibly intended, but only what intention is expressed in the language used': Joyce's Est., 273 Pa. 404, 407; Biles v. Biles, 281 Pa. 565, 568."

Hence, to perform the provisions of a will it is necessary to discover the intentions of testator within its four corners. If its language is clear and unequivocal, there is no occasion for construction or interpretation; if ambiguous, the canons of construction may be resorted to for assistance and, in the case of latent ambiguities, evidence may be admitted to identify the subject or the object of the bounty of testator.

"In order that a beneficiary may take under a will, he must be designated therein, either by name or by description, with such certainty that he can be readily identified and distinguished from every other person, otherwise the devise or bequest is void for uncertainty": 40 CYC 1445, 1446.

"In determining what person or thing may properly correspond to a description in a will, either a beneficiary or property, if the evidence shows the existence of such person or property, the will is not ambiguous, and the person so described and identified must be taken as the intended beneficiary. 'It is not *essentially necessary* (sic) that a testator, in his will, name the legatee or devisee in order to give effect to the bequest. It is sufficient if he is so described therein as to be ascertained and identified': Dennis v. Holsapple, 148 Ind. 297, 301. The testator need only provide the means of ascertaining the object of his bounty, ac-

cording to the maxim, id certum est quod certum reddi potest. If the description distinguish the claimant from every other person, it is enough: Jarman on Wills (6th ed. by Chas. Sweet, 1901), vol. I, p. 478": Reinheimer's Estate, supra.

In 1 Jarman on Wills (5th Am. ed., 1880) 643, 644, 645, it is said:

"In the construction of wills the most unbounded indulgence has been shown to the ignorance, unskillfulness and negligence of testators: no degree of technical informality, or grammatical or orthographical error, nor the most perplexing confusion in the collocation of words or sentences, will deter the judicial expositor from diligently entering upon the task of eliciting from the contents of the instrument the intention of its author, the faintest traces of which will be sought out from every part of the will, and the whole carefully weighed together; but, if, after every endeavor, he finds himself unable, in regard to any material fact, to penetrate through the obscurity in which the testator has involved his intention, the failure of the intended disposition is the inevitable consequence. . . . To the validity of every disposition, as well of personal as of real estate, it is requisite that there be a definite subject and object; and uncertainty in either of these particulars is fatal."

Instances of the application of this rule that a testamentary provision may be declared void for uncertainty are: Kelley v. Kelley, 25 Pa. 460; Womack's Estate, 253 Pa. 384; Wise et al. v. Rupp, 269 Pa. 505; Mengel's Estate, 296 Pa. 99; McKean Estate, 159 Pa. Superior Ct. 409.

"Words and limitations may be supplied or rejected when warranted by the immediate context or the general scheme of the will, but not merely on a conjectural hypothesis of the testator's contention however reasonable, in opposition to the plain and obvious sense of the instrument": Bender v. Bender, 226 Pa. 607,

quoted in Jacobs' Estate, 343 Pa. 387, 392, and Davis's Estate, 346 Pa. 247, 251. See, also, Riegel et al. v. Oliver et al., 352 Pa. 244, 244.

"They (words) can be supplied only in cases necessary to give effect to the most unquestionable purpose of the testator: 1 Redfield on Wills 470. Hence, if a doubt arises that the change would advance the real intent of the testator, it cannot be made: Annable v. Patch, 3 Pick 360. Besides, in a doubtful case we should adhere, as closely as the language will permit, to the general rules of inheritance: France's Estate, 25 P. F. Smith 220. The appellant being the heir at law, every fair intendment of construction should be made in her favor: Bender v. Dietrick, 7 W. & S. 284; Cowles v. Cowles, 3 P. F. Smith 175": Varner's Appeal, 87 Pa. 422.

In Nebinger's Estate, 185 Pa. 399, 403, 404, it is said:

"In Jarman on Wills *356, it is said: 'Conjecture is not permitted to supply what the testator has failed to indicate, for as the law has provided a definite successor in the absence of disposition, it would be unjust to allow the right of this ascertained object to be superseded by the claim of anyone not pointed out by the testator with equal distinctness. The principle of construction here referred to has found expression in the familiar phrase that the heir is not to be disinherited unless by express words. or necessary implication.' In DeSilver's Estate, 142 Pa. 75, the learned court below used the following language, which on appeal was adopted by this Court: 'The rights conferred by the intestate law are only taken away by a will which effectually disposes of the entire estate of the decedent; and while a construction is not to be adopted, if it can be avoided, which will lead to an intestacy, interpretation is never to assume the proportion of reformation. The question is confined to the meaning of what the testator has said, and does not extend to the consid-

eration of what he might have said, but did not. The maxim also is fundamental that the heir or statutory distributee will not be disinherited except by express words or necessary intendment.' In this state, the rule, that in the construction of a will of doubtful meaning every intendment is to be made in favor of the heir or next of kin, is of universal application: Clayton v. Clayton, 3 Binney 486; Brendlinger v. Brendlinger, 26 Pa. 132; Hancock's Appeal, 112 Pa. 532." See also French's Estate, 292 Pa. 37; Jacobs' Estate, 343 Pa. 387; Davis' Estate, 346 Pa. 247; Loving Estate, 159 Pa. Superior Ct. 339.

The testamentary character of the writing involved in this case is not in controversy. Testatrix calls it "my will". The use of the past tense of the verb "ask" in the sentence beginning with the words "I asked that . . .", may mean that testatrix had previously requested Harry L. Wise and Carrie I. Eckerd, two of her children, to be the executors of her will and to do certain things, but the word *asked* must be interpreted as if it were the word *ask*. The verbs "ask", "request" and "desire" are generally precatory expressions, when used in a testamentary writing, but the word "asked" in this will imports a mandate, a direction (Calder's Estate, 343 Pa. 30), and the second sentence of this will is construed to mean that testatrix appointed Harry L. Wise and Carrie I. Eckerd as the executors of her will and directed them to sell all her personal property and real estate, pay the obligations of her and her estate, and divide the remainder among (we construe the word "between" as meaning "among": Hicks' Estate, 134 Pa. 507; Green's Estate, 140 Pa. 253) "the four of you". What testatrix meant by the words, "the four of you", is now our task. If she meant her four children only, the exceptions must be sustained, but if she included her granddaughter, Elinor Ann Wise, or if the direction to divide the remainder is void for uncertainty as to the

objects of her bounty, the exceptions must be dismissed.

The last sentence of the will is: "And if there is here of any thing belong to any of *you four* each is to have his and if want to devide it if you can suite every body." This throws no light on the meaning of the words, "the four of you", in the preceding sentence. We may surmise an intent by testatrix that, if anyone made a gift to her of any article then in the possession of testatrix, such articles should be returned to the donors thereof respectively. If that is correct, it would be reasonable to suppose that she wanted such articles returned to all donors, whether they were children, grandchildren, sons-in-law, daughters-in-law, or others, and in that event the word "you" might include more than children. If she intended such donors as a class, the use of the word "four" would not limit the word "you" to her four children, as authorities hereafter cited show. But the intention of testatrix in this last sentence is so uncertain and obscure that its provisions could not be carried out. No claim has been made, so far as the record shows, to any specific articles of personal property by virtue of this sentence. We discuss it only for the purpose of discovering, if possible, anything that will assist us in our main task.

If testatrix, instead of naming two of her children in the first part of her will, had named all four of them and appointed them as executors, there would be some grounds for claiming that, by the words "the four of you", she meant all four of her named children. A similar claim could be made if she had written the names of her four children on an envelope, enclosed her will therein and then sealed the envelope, as was the situation in Fosselman v. Elder, etc., 98 Pa. 159, or if the said writing had been preceded by a salutation such as "Dear Children" or the form of salutation in McKean's Estate, 159 Pa. Superior Ct. 409. In Arendt v. Arendt, 80 Ark. 204, 96 S. W. 982, a will in the

form of a letter, reading thus: "Dear wife: You will find everything all right, I hope. Whatever I have in worldly goods, it is my wish that you should possess", was held testamentary and to be a gift to the wife of testator of all his estate. But the Wise will contains no such indications of the identity of the legatees. In using the personal pronoun "you", which is in the second person, speaking grammatically, testatrix evidently was addressing someone. Harry L. Wise and Carrie E. Eckerd do not claim that they are the sole persons thus addressed and are consequently entitled to the amount to be divided, although that theory would furnish, to paraphrase the language of Jarman, a faint trace of the intent of the testatrix. If the gift is to a class, as seems to be the case, whether the class consists of children or grandchildren or heirs or issue or next of kin, the use of the numeral "four" has no significance for the gift would go to all of the members of that class, whether more or less than four.

"The understating or overstating of the number that comes within the class does not change the construction of a will. A gift to a class is not a gift to a definite, but generally to an uncertain, number and the number only affects the amount that those entitled to participate shall receive: McMasters v. Shellito, 14 Pa. Superior Ct. 303; Urie v. Irvine, 21 Pa. 310": Weber's Estate, 155 Pa. Superior Ct. 403, 406. To the same effect are Vernor v. Henry, 6 Watts 192; Hennershotz's Estate, 16 Pa. 435.

If testatrix meant, for example, her next of kin in using the word "you", her gift would be to all of them, whether four, five or more or three or less in number. While the apparent meaning of testatrix is that she meant to choose four out of a class, yet, failing to name the four or properly indicate them, her limitation of the number has no controlling effect, since the whole class must be deemed to be beneficiaries of her bounty.

Counsel for exceptants contends that testatrix, in signing her name as "mother", signified an intent to give to her four children. For equally good reasons it could be contended that, if she had signed as "grandmother", it would have manifested an intent to make the gift to her grandchildren as a class, even though there were more than four. Or, if she had signed as "Aunt Clara", the gift would have been to her nephews and nieces. We consider either of these contentions as erroneous. When she finished writing her will, except her signature, her intentions with respect to her estate were contained in what she had written and were complete, whether clearly or ambiguously stated, or else they were absent and unexpressed. Nothing was added to or subtracted from the meaning of what she had written by her signature, and such meaning would be the same, whether she signed her full name or part of it or a nickname or a term of endearment. The proper office of a signature to a testamentary paper is to identify a particular person as testator and to authenticate the writing as the legal will of the signer. Besides, the word "mother" is a term of endearment concerning elderly women sometimes adopted by people who are not their children but have great affection for them. Often all the members of a family refer to the wife and mother as "mother", even the husband and stepchildren or others. In McKean's Estate, 159 Pa. Superior Ct. 409, a testamentary writing in the form of a letter, with the salutation "Dear Scott", was signed "Mother", though "Scott" was her stepson. Sometimes a woman will be called "grandma" by her grandchildren, her children and her husband. We cannot see that testatrix added any meaning to her will by signing herself as "mother" instead of signing as "Clara M. Wise".

To sustain the exceptions it is really necessary to supply the word "children" after the word you, so that the will would direct the division of the remainder

among "the four of you children". According to the authorities cited above this cannot be done. It is a matter of great doubt, as we view it, whether "children" or "grandchildren" or "heirs" or "issue" or "next of kin" is the proper expression to be supplied, if supplying a word or expression is permissible. There is nothing in the will to justify supplying one of these in preference to any other. If testatrix had used the expression "the four of you children" in another part of the will, there would be some reason for supplying the word "children" after the expression "the four of you" in the second sentence. The context of the will contains nothing to indicate the word or words to be supplied to fill up the vacuum in it, and according to the authorities cited above we cannot properly supply any word.

It is presumed that, when testatrix sat down to write the will, she knew that she had four living children, that her son Charles L. Wise was dead, and that he had a daughter Elinor Ann Wise, who was her granddaughter and one of the persons entitled to her estate if she did not make a will. It may be that testatrix had formed the intent to disinherit this granddaughter and wanted to make a will to give effect to that purpose, but it was necessary for her, in writing her will, to clothe that intent in language sufficiently clear and precise to disclose such intent in an unmistakable manner. That she did not do, and we cannot make any surmise as to her intent an instrument of interpretation but must find all the indicia of her intentions within the four corners of her will. The inevitable consequence is that the provisions of her will purporting to dispose of her estate are void for uncertainty.

It is said that no will has a brother, but we believe that this will has a "near relation" in Fosselman v. Elder, 98 Pa. 159. In this case the formal will of Elizabeth Foselman had been probated, and then among her effects was found a sealed envelope inscribed:

"Dear Bella: This is for you to open." Parol evidence was received to identify the "Bella" as Isabella Fosselman, decedent's husband's niece, who made her home with decedent and her husband and worked for decedent in her millinery business. When opened, the envelope was found to contain a note for $2,000 payable to decedent and a paper writing reading thus: "Lewistown, October 2d 1899 My wish is for you to draw this 2000 dollars for your own use should I die sudden. Elizabeth Fosselman." Judge Junkin, of Perry County, specially presiding in Mifflin County, held that the writing in the envelope was testamentary in character, that the inscription on the envelope was not to be considered as a part of the testament since it was not signed, and that the writing in the envelope signed by decedent was void for uncertainty as to the object of her bounty, saying in part:

"The next question is, who is 'you'? There are millions of people in the world who could be addressed as you, and here is a patent ambiguity on the face of the will. Here, too, this anomalous will presents what, it is safe to say, has never occurred before, namely, a bequest in the second person without naming the legatee . . . in the case before us there is neither name nor description of the legatee, simply 'my wish is for you to draw,' &c. There is not even a misdescription to show that she meant some person. It is practically a blank, is not so strong or clear as an initial letter, for an initial letter might lead to something . . . We have been much embarrassed with this view of the case, to wit: The testator, having given the legacy to 'you', thus designating some one, why may we not show by parol who was intended by the pronoun? That where the bequest is so given, all living persons are comprehended in the designation, why not, as where the description fits two or more, hear evidence of the intent to give to one of many? We answer, that while the reasoning is plausible, still we are bound by the rule

that patent ambiguities cannot be explained by evidence dehors the will. It is plain that this will does not tell you to whom the legacy is given, and this is the essence of a patent ambiguity; we would then be making a will for the testatrix, because, while she has not given the slightest clue—not even the sex—to enable us to discover the object of her bounty, we will do that for her whenever we name anybody as entitled to take. We conclude that although the paper 'A' is the testament of Elizabeth Fosselman, yet it is incapable of execution, and is void for uncertainty; not so amusing as David Kelly's will, in 1 Casey 461, but quite as incomprehensible without the aid of forbidden evidence."

On appeal, the Supreme Court held that the envelope and the writing within it constituted a testamentary writing and reversed the judgment of the lower court and said:

"It is true that the testamentary paper of October 2d, 1879, does not designate the plaintiff (Isabella Fosselman) by name, and if we had no written evidence to show who was meant by the pronoun 'you', the bequest of the note would be void for uncertainty; but it is a settled fact that the envelope is addressed to the plaintiff, and why should not that indorsement in the handwriting of the testatrix be taken as part of the testamentary disposition? . . . we are of opinion that the inscription on the envelope should be read as the preface to and in connection with the paper enclosed therein, and that they together constitute a valid testamentary disposition of the accompanying note, operating as a codicil to the will of the testatrix."

If it had not been for the envelope, the Supreme Court would have affirmed the judgment, and the discussion by Judge Junkin concerning the impossibility of ascertaining the meaning of the word "you" is applicable to the will now under consideration by this court. In the cases of McKean's Estate, 159 Pa. Su-

perior Ct. 409, and Arendt v. Arendt, 80 Ark. 159, 96 S. W. 982, the pronoun "you" was used by testators to designate the legatees and the designation in each case would have been insufficient without the respective salutations "Dear Scott" and "Dear wife".

Since the provisions of the will of Mrs. Wise purporting to dispose of her estate after her death do not unmistakably designate the beneficiaries of her bounty and are void for uncertainty, we conclude that she died intestate and that her estate must pass to her next of kin under the intestate law, namely, her four children, Harry L. Wise, Carrie I. Eckerd, Mary L. Hollenbaugh and Clara C. Robinson, and her granddaughter, Elinor Ann Wise, share and share alike, the latter taking the share her father, Charles L. Wise, would have taken if he had lived to survive his mother.

### Decree

And now, July 12, 1947, the exceptions to the report of Alan M. Wolf, auditor, are dismissed, the said report is now confirmed absolutely, and Harry L. Wise and Carrie I. Eckerd, executors of the last will and testament of Clara M. Wise, deceased, are hereby ordered and directed to pay the balance in their hands, to wit, the sum of $6,342.32, according to their account confirmed December 3, 1946, to the following named persons in the following amounts, to wit:

| | |
|---|---|
| Joe G. Darlington, costs | $8.75 |
| Weekly News Sun, auditor's notice | 3.00 |
| S. E. Troutman, Esq., appearance at audit | 15.00 |
| William S. Morrow, Esq., appearance at audit | 15.00 |
| Carrie I. Eckerd, appearance at audit | 15.00 |
| Harry L. Wise, appearance at audit | 15.00 |
| Catherine K. Smith, stenographic fees | 15.00 |
| Alan M. Wolf, auditor's fee | 175.00 |
| Carrie I. Eckerd, distributive share | 1,216.11 |
| Mary L. Hollenbaugh, distributive share | 1,216.11 |

Harry L. Wise, distributive share ...... 1,216.11
Clara C. Robinson, distributive share .... 1,216.12
James C. Wilson, guardian of estate of
    Elinor Ann Wise, a minor, her distribu-
    tive share ....................... 1,216.12
and it is further ordered that exceptants pay the costs
accruing on the exceptions.

Exceptions allowed.