Mengel's Estate.

Argued January 29, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*E. H. Deysher*, with him *Stevens & Lee*, for appellant, cited: Houser v. Houser, 268 Pa. 401; Line's Est., 221 Pa. 374.

*O. M. Wolff*, for appellee, cited: Puterbaugh's Est., 44 Pa. Superior Ct. 102; Wilhelm's Est., 49 Pa. Superior Ct. 213; McCullough's Est., 287 Pa. 580; Wagner's Est., 289 Pa. 361; Bearmer's App., 126 Pa. 77; Carmello's Est., 289 Pa. 554; Baugh's Est., 288 Pa. 308; Schattenberger's Est., 269 Pa. 90; Sheetz's App., 82 Pa. 213; Mayer's Est., 289 Pa. 407; Frechie's Est., 62 Pa. Superior Ct. 48.

Opinion by Mr. Justice Frazer, March 18, 1929:

This case comes here on appeal from a decree of the Orphans' Court of Berks County, dismissing exceptions filed by appellant to the auditing judge's report confirming absolutely the adjudication of the estate of Arthur R. Mengel, who became in his school days an amateur postage stamp collector and at the time of his death was an extensive dealer in issues of domestic and foreign postage stamps and owner of important permanent collections. His estate consisted wholly of personal property, of which his stamps formed the most valuable part. He left a will dated July 3, 1916, in which he bequeathed his entire collection of stamps, coins and all his books to Levi W. Mengel, his father, and the residue and remainder of his estate to Mary E. Mengel, his mother, appellant here. When about to undergo a surgical operation, he wrote and deposited with his belongings three letters, one to his attorney, another to his father and the third to his mother, all of even date, July 18, 1924. These letters, admitted to probate as codicils to his will, were plainly testamentary writings, and while they contain directions deviating from and conflicting with the provisions of his will, they also comprise, as the court below finds, directions wholly contradictory to others therein set forth and dispositions too ambiguous to be put into effect. By the letter to his mother he gives her "gold pieces" included by the terms of the will of 1916 in the coin collection bequeathed to his father, and he directs that designated volumes containing stamps be given to his father from the collection of stamps already left him by the will. From the same collection he specifies several of the most valuable stamps to be given his mother. The difficulty here arose chiefly out of the ineffectual efforts of the auditing judge and court below to reconcile the descriptions and locations of the albums, disposed of to the mother, as they are set forth in testator's letters of 1924, with the actual appearance and locations of the various albums found at the time the inventory

and appraisement of his assets were made after his death. The particular albums mentioned in the letters were not discernibly separable from the numerous other volumes comprised in his stock and collections of stamps. Under these conditions, in the final decree of distribution, the stamps were divided into two general classes—testator's personal permanent stamp "collection," and "stock stamps," gathered and held for sale and exchange. In his will he had bequeathed his "entire" "collection" of stamps to his father, and following this testamentary direction, distribution of the "collection" was made to the father, and the "stock" stamps to the mother, as inclusive in the residuary bequest. The contention of appellant is that albums disposed of by the codicil to Mrs. Mengel could have and should have been positively identified and located among testator's assets, that these thus identified should have been given to her, and that the court below erred in concluding identification had not been made.

As there is but one question presented for our determination, that relative to identification and disposition of the stamps given in the letters to the mother by the terms of decedent's codicil, we need refer in the course of our review of the case only to certain phases of it bearing upon that question.

As the court below properly found, the letters are unquestionably testamentary writings and show, by their distinctly expressed terms, that they are to be taken as codicils to the will of 1916 and not as supplanting that instrument, and are accordingly to be read together as a single instrument or codicil, since they bear the same date and manifest no successive exception. While the court found it impossible to reconcile portions of the directions in the letters with a fair and proper distribution of the estate, the letters establish the important fact that the paramount intent of the will of 1916, as well as that of the codicil, was to make, as far as possible, an equality of distribution of his property between

his parents. In his letters he refers to his will as the guide for the disposition of his estate. To his lawyer he writes: "You have my will and know what I want...... You know the conditions and I have tried to divide things equally." In his letter to his mother he says: "My will as you know is at Mr. Fisher's office. I haven't seen it for some time but I think it O. K." Undoubtedly then the controlling intent of testator is plain, and the codicil must be construed in the light of that intent, supporting it where it is possible and deviating from it only when necesary to give effect to the clearly expressed and changed intent of the codicil: Baugh's Est., 288 Pa. 308, 311. Unfortunately, while the intent is here obvious, contradictions and obscurities found in the codicil and consequent impossibility of reconciling identification therein of gifts,—albums or volumes of stamps,—with stamps and albums subsequently found in his residence after his death, necessarily and inevitably brought about a failure to carry out the exact directions of the codicil. The court below cites and follows the rules of construction set forth in Wise v. Rupp, 269 Pa. 505, 508: "The courts are not permitted to supply what the testator has failed to indicate; and if, after every endeavor, the judicial expositor finds himself unable, in regard to any material fact, to penetrate through the obscurity in which the testator has involved his intention, the failure of the intended disposition is the inevitable consequence."

Testator was a young man at the time of his death, had been from boyhood an ardent collector of stamps and had eventually built up a rather extensive business as a dealer and collector. With characteristic boyish indifference and negligence he had kept his supplies and albums without regard to order as to location. This fact was at once apparent when the inventory and appraisement were made. Identification of particular stamps and volumes of stamps described and located in his letters was impossible, either as to subject-matter or

location. His mother, testifying to the manner in which his stamps were kept in his lifetime, said: "He had them scattered all over the different rooms he used—some on the table and at other places. The valuable ones he always kept in those boxes locked, and he kept one bookcase locked. But the stamps he was working on were loose, scattered all over the place." After his death, efforts were made, by various persons, to find and identify the exact books of stamps mentioned in his letters to be given his mother, as well as those to go to the father; no identification, however, could be clearly made. His attorney, to whom one of his letters was addressed, testified to the disorder in which the stamps and albums and other property were found after testator's death, as follows: "The dresser was littered up with all kinds of paper;......you could hardly get through the room; ......the stamp albums were scattered all over the place." This witness, himself an amateur stamp collector, was unable to identify the volumes of stamps specifically mentioned in the codicil. Similar testimony was given by other witnesses. Referring to this situation, the auditing judge in his adjudication says: "It is easily understood and appreciated that over a period of more than two and one-half years an active, growing collection will not remain on the same shelf, with 'slips sticking out,' or even in the same packages, indexes and boxes. These details were not present at his death and identification under the vague descriptions became impossible...... Testimony was taken in an effort to identify testator's designations. No light was cast upon testator's words, and we are left to his words alone for a construction and for identification of the subjects of the apparent changed testamentary intent."

We are dealing here with a case, as is said in South Mahoning Twp. v. Marshall, 138 Pa. 570, 575, which "belongs to that very difficult class in which a situation has arisen never contemplated by the testator, and which renders the execution of all his directions impossible.

We are obliged therefore to separate them and preserve the principal intent, even at the sacrifice of the subordinate." This is the situation in the case before us, and the particular difficulty that arose requires surmounting by a fair and sensible adjustment, although the result was not that intended by testator. Special difficulties, as observed in I Page on Wills, section 855, "arise when it is attempted to describe personal property by location in which it is to be found. One is that it is possible to move personal property from one place to another; and it is therefore quite likely that property which answers to such description, at testator's death, may be either greater or less in value than he had reason to anticipate." Particularly applicable to the present controversy are the words of an English case, In re Robson, 2 Ch. 559 (1891), where the question was the disposition under a will of a desk, "with the contents thereof," and where CHITTY, J., said: "I have observed, during the argument, upon the risk that men run in making bequests of this kind. During a man's last illness some person honestly finding valuable things lying about might put them into the chest or desk, or the like, for the sake of safety, and there would be a question whether those things—not put there by testator's direction or by his own hands—passed or not; and moreover, it seems to me an unwise thing for a testator to make a gift in this way, because one moment he may take the thing out, and another moment he may put it in. The only advantage, if it be an advantage to him, is that he can from time to time be making the gift a better gift or a worse gift, or not a gift at all."

We conclude that in the present case the learned court below, finding the directions in testator's codicil, with respect to gifts of particular stamps to his parents, inoperative and ineffective, arrived at a just and reasonable distribution by giving, as the will of 1916 directs, the "collection" of stamps to the father and the "stock" stamps, forming a part of the residuary bequest, to the

mother. The controlling intent of testator,—an equal division, as far as possible, between the parents,—thus governs in the final adjudication of the estate, on which point the auditing judge makes this reassuring observation; "Reference to the valuations in the inventory and appraisement of his personal assets bears out the fact that through and after the passing of years, the application of the terms of the will, dated July 3, 1916, will work out the approximate accomplishment of that intent, with the advantage favoring the mother."

The decree of the court below is affirmed at appellant's costs.