## Kurtz Estate

*Brown, Swope & MacPhail,* for petitioner.

*Oscar F. Spicer,* guardian ad litem for William Lane, a minor.

SHEELY, J., September 26, 1963.—By paragraph third of his will, testator devised and bequeathed unto Merle Little his home property, "also my furniture and household articles, carpenter tools and machinery; except contents of front rooms, which consists of all my personally executed paintings, including water colors, oil paintings on glass, leaded and in frames." By paragraph fourth of his will, he bequeathed "all contents of down stairs front rooms" to Walter B. Lane.

Testator was an artist and lived in a small one and a half story house. There were three rooms down stairs, a kitchen and two front rooms, one of which he occupied as a bedroom and the other he called his art studio. On the second floor there were two small rooms used primarily for storage. The premises also included two workshops and a barn. Merle Little was a friend and neighbor of the deceased. Walter B. Lane was also a friend and is a photographer and artist.

At the time of his death there were in the art studio an organ, gas heater, small table, chest of drawers, another chest, two straight chairs, numerous miscellaneous dishes, and numerous paintings and works of art, books and pictures. In the bedroom there were a bed springs, blankets, chest of drawers, spool stand, and miscellaneous dishes, but no paintings. In the kitchen there were various articles of household goods and some paintings. Other paintings were found in the two upstairs storage rooms and in the two workshops.

The questions presented are whether the items of household furniture in the downstairs front rooms are included in the general bequest of furniture and household articles to Merle Little or whether they fall into the bequest of "all contents of downstairs front rooms" to Walter B. Lane, and who is to be the recipient of the personally executed paintings found elsewhere than in the front rooms.

The object in the interpretation of all wills is to ascertain the intention of testator and this is to be determined from all the language contained in the four corners of the will, together with all the surrounding circumstances and the scheme of distribution, and not merely from isolated clauses or provisions of the will: Vandergrift's Estate, 406 Pa. 14 (1962) ; Dinkey Estate, 403 Pa. 179 (1961) ; Grier Estate 403 Pa. 517 (1961). Precedents are of little aid

since each will must depend upon its own peculiar language. In Mengel's Estate, 296 Pa. 99, 105 (1929), it was pointed out that special difficulties arise when it is attempted in a will to describe personal property by the location in which it is to be found. It is always possible to move personal property from one place to another, and it is therefore quite likely that property which answers to such description at testator's death may be either greater or less in value than he had reason to anticipate. Also, during a man's last illness some person honestly finding valuable things lying about might put them in a place of safety, and there would be a question whether those things, not put there by testator's direction or by his own hands, passed or not. It was also pointed out that it is ". . . an unwise thing for a testator to make a gift in this way, because one moment he may take the thing out, and another moment he may put it in."

In the present case, were it not for the clause "which consists of all my personally executed paintings, including water colors, oil paintings and paintings on glass, leaded and in frames" following the exception of "contents of front rooms" in the bequest to Merle Little, there would be no problem. Merle Little would take all of the furniture and household articles except those items located in the front rooms, and Walter B. Lane would take the contents of the front rooms, whatever they might be, but nothing else. The personally executed paintings located in the kitchen, storage rooms, and workshops would not be included in the bequest of furniture and household goods to Merle Little, which would be construed to include everything of a permanent nature used in, purchased, or otherwise acquired by testator for his home: Doyle's Estate, 19 Erie 366 (1937); and would have to be sold.

We must assume, however, that testator included

that clause for a purpose. It is significant that he referred to *"all* my personally executed paintings," etc., thereby indicating, aside from the fact that none of his personally executed paintings would be included in a bequest of furniture and household articles, that none of his paintings should go to Merle Little. It also indicates that he contemplated that *all* of his personally executed paintings would be located in the two front rooms at the time of his death in which event they would pass to Walter B. Lane under the bequest in paragraph fourth of "all contents of downstairs front rooms". He did not make any provision for personally executed paintings which might be located elsewhere.

It is also significant that no provision is made in the will for the sale of any property, which would indicate that he believed he had disposed of all tangible property in paragraphs second, third and fourth of the will. After the bequests of furniture, etc., to Little and the bequests of the contents of the front rooms to Lane, testator directed in paragraph fifth that all moneys standing in a certain trust fund should go to his son, and in paragraph sixth he directed that "all monies remaining after all debts and inheritance taxes are paid" should be divided into three equal parts and given to Merle Little, Wilbur and Annie Matthews, and William Lane (son of Walter B. Lane). He here refers only to money, although paragraph sixth is broad enough to be considered as a general residuary clause.

It seems clear that in drafting his will testator had in mind certain specific classes of property; his home property with his household furniture, carpenter tools and machinery; his personally executed paintings, etc.; and his money. His scheme of distribution was to dispose of each class as a unit, although he used inexpert language in doing so. We think he used the

clause "which consists of all my personally executed paintings," etc., to define what he meant by "contents of front rooms", which expression he used both in the gift to Walter B. Lane and in the exception contained in the gift to Merle Little. If we carry that definition into paragraph fourth that paragraph will read: "All contents of downstairs front rooms, which consist of all my personally executed paintings etc., I give and bequeath to Walter B. Lane." The word "all" was repeated in paragraph fourth to emphasize that Lane was to receive all of the paintings.

It is our conclusion that under the will testator intended to bequeath to Merle Little his home property and all furniture, household articles, carpenter tools and machinery, wherever located; that he intended to bequeath to Walter B. Lane all of his personally executed paintings, etc., wherever located; and that his money would be distributed under the fifth and sixth paragraphs of the will.

And now, September 28, 1963, it is decreed as follows:

Under the provisions of paragraph third of testator's will, he bequeathed unto Merle Little his home property in Straban Township and all of his furniture and household articles, carpenter tools and machinery.

Under the provisions of paragraph fourth of his will, testator bequeathed unto Walter B. Lane all of his personally executed paintings, including water colors, oil paintings and paintings on glass, leaded and in frames.